LAKE ST. LOUIS COMMUNITY
ASSOCIATION, Plaintiff–
Respondent,

v.

OAK BLUFF PRESERVE, et al.,
Defendants–Appellants.

No. 71160.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 9, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 30, 1997.

Application to Transfer Denied
Dec. 23, 1997.

Mary Elizabeth Dorsey, St. Louis, for defendants-appellants.

Padberg, McSweeney, Slater & Merz, Richard J. Burke, Jr., St. Louis, for plaintiff-respondent.

KAROHL, Judge.

Defendants-counterclaimants, Oak Bluff Preserve Limited Partnership, William B. McGinnis, Jess J. Ornelas, Victoria Ornelas, James J. Sauter and Mary A. Sauter,[1] appeal from an order dismissing their counterclaim. In its order, the trial court found: "Defendants' Motion to Set Aside shall be a final order for purpose of allowing Defendant to immediately appeal pursuant to Rule [74.01] to avoid duplicity of trials." The Lake St. Louis Community Associations's [Association] petition to collect assessments from de-

---

**1.** Oak Bluff Preserve Limited Partnership presently owns 5 lots of Oak Bluff Preserve, a subdivision. William B. McGinnis, Jess J. Ornelas and Victoria Ornelas are lot owners of Oak Bluff Preserve. James J. Sauter and Mary A. Sauter are former owners of a lot of Oak Bluff Preserve.

fendants, lot owners, is pending. The Association is a not-for-profit corporation.

Defendants alleged in their counterclaim:

8. On July 25, 1978, the Plaintiff, Lake Saint Louis Community Association, and Defendant, Oak Bluff Preserve, a Limited Partnership, entered into a written contract, designated a Licensing Agreement, in connection with the development of Oak Bluff Preserve, a subdivision, located in St. Charles, County, Missouri. . . .

9. At all times mentioned herein, the Plaintiff, Lake Saint Louis Community Association and Defendants, Oak Bluff Preserve, a Limited Partnership, intended that the Licensing Agreement be recorded and become a covenant running with the land inuring to the benefit of Oak Bluff Preserve, a Limited Partnership, and all future lot owners in Oak Bluff Preserve Subdivision.

10. Defendants, William B. McGinnis; Jess Ornelas and Victoria Ornelas; and James J. Sauter and Mary A. Sauter acquired their ownership interests from Oak Bluff Preserve, a Limited Partnership by deeds of conveyance subsequent to the recordation of the Licensing Agreement in the records of St. Charles County and are intended third party beneficiaries to the Licensing Agreement and assignees of the interest of Oak Bluff Preserve, a Limited Partnership.

The Licensing Agreement provided: (1) within one year of the conveyance of a parcel of land by Oak Bluff Preserve Limited Partnership to Association located between Lots 19 and 20 of Oak Bluff Preserve Subdivision, Association would construct a marina on that parcel, together with two pedestrian access ramps; (2) after the marina is constructed, Association agreed to maintain it perpetually; (3) within one year of the conveyance of the parcel, Association agreed to clear a channel of Peruque Creek for purposes of navigation as provided in the Licensing Agreement; and, (4) after the original clearing of the channel, Association was thereafter obligated to perpetually clear and maintain it for the purposes of navigation, the prevention of soil erosion, the facilitation of lake management, the enhancement of conservation and the development of recreational improvement.

Defendants alleged in their counterclaim that they fulfilled all of their agreements and covenants under the Licensing Agreement including the conveyance of the parcel of land, but the Association breached, and continues to breach, its agreements and covenants of the Licensing Agreement in the following ways: (1) Association "did not construct the [marina] within one year of the conveyance to it of the parcel of land"; (2) Association "has altogether failed and refused to *properly* construct and maintain the [marina]; the two (2) pedestrian access ramps to the marina; or the marina grounds as required by the Licensing Agreement"; (3) Association "did not clear the Peruque Creek Channel within one year of the conveyance to it of the parcel of land . . . for the purposes of small craft navigation but permitted a massive log jam to remain and develop along the Peruque Creek Channel"; (4) Association "has altogether failed and refused to clear and maintain the Peruque Creek Channel following the conveyance to it of the parcel of land . . . but, instead, has allowed and permitted numerous log jams and debris to accumulate . . . which hinder and totally obstruct small craft navigation contrary to the Licensing Agreement"; and, (5) Association "has altogether failed and refused to maintain the Peruque Creek Channel so as to prevent erosion; facilitate lake management; enhance conservation; or foster recreational improvements as contemplated in the Licensing Agreement." (emphasis added).

Defendants alleged that as a result of these breaches they have been damaged in that: (1) they "have been directly deprived and denied of the full physical use and enjoyment of their respective properties in that [Association] has failed and refused to maintain the [marina]"; (2) they "have been directly deprived and denied of the full physical use and enjoyment of Peruque Creek in that [Association] has failed and continues to refuse to keep and maintain the Peruque Creek Channel clear for navigational purposes"; (3) "[t]he value of the property of the individual Defendants has been diminished

and lessened because of the continuous failure and persistent refusal of [Association] to honor its aforesaid contractual commitments under the Licensing Agreement"; (4) "[t]he value of the property of the individual Defendants has been diminished because [Association] has failed and refused to perform its flood easement obligations under the Licensing Agreement"; and, (5) Association "has altogether failed and refused to enhance conservation or recreational improvements in Oak Bluff Preserve to the detriment of the Defendants while, at the same time, spending enormous sums of money ... in other parts of Lake Saint Louis affected by the Lake Saint Louis Declaration of Covenants and Restrictions."

In the counterclaim defendants prayed "for damages in a reasonable amount, for their costs and for such other and further relief as the Court deems proper." They did not pray for equitable relief.

On December 22, 1995 Association filed a motion to dismiss defendants' counterclaim. It alleged the counterclaim should be dismissed because it "is barred by the Statute of Limitations, RSMo. 516.120, by res judicata, by estoppel and by splitting of said Defendant's [sic] alleged cause of action." On January 26, 1996 the trial court granted Association's motion to dismiss without specifying the grounds. Association now agrees the only available legal ground for dismissal is the bar contained in Section 516.120 RSMo 1994. Accordingly, we only review the trial court's order of dismissal on the ground that the counterclaim is barred by that Statute of Limitations.

Defendants argue:

**THE TRIAL COURT ERRED IN SUSTAINING PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS BASED UPON THE STATUTE OF LIMITATIONS [SECTION] 516.120 R.S.Mo. IN THAT (1) DEFENDANTS' COUNTERCLAIMS ARE NOT SUBJECT TO A STATUTE OF LIMITATIONS, OR IN THE ALTERNATIVE, (2) THE FIVE–YEAR STATUTE OF LIMITATIONS IN [SECTION] 516.120 WOULD MERELY LIMIT DEFENDANTS' DAMAGES TO THE FIVE YEARS IMMEDIATELY PRIOR TO DEFENDANTS' FILING THEIR COUNTERCLAIM ON AUGUST 23, 1994.**

 When reviewing the grant of a motion to dismiss a counterclaim, all facts alleged in the counterclaim are deemed true and the defendant is entitled to the benefit of every reasonable intendment. *See Magee v. Blue Ridge Professional Bldg. Co., Inc.*, 821 S.W.2d 839, 842 (Mo. banc 1991). In their counterclaim, defendants alleged plaintiff breached several provisions of the Licensing Agreement. Generally, breach of contract actions are subject to Section 516.120.1 RSMo 1994 which provides:

Within five years:

(1) All actions upon contracts, obligations or liabilities, express or implied, except those mentioned in section 516.110, and except upon judgments or decrees of a court of record, and except where a different time is herein limited.

The term is extended for some contracts by Section 516.110 RSMo 1994 which provides:

 Within ten years:

(1) An action upon any writing, whether sealed or unsealed, for the payment of money or property;

(2) Actions brought on any covenant of warranty contained in any deed of conveyance of land shall be brought within ten years next after there shall have been a final decision against the title of the covenantor in such deed, and actions on any covenant of seizin contained in any such deed shall be brought within ten years after the cause of such action shall accrue;

(3) Actions for relief, not herein otherwise provided for.

Section 516.110 RSMo 1994 applies to actions for the *enforcement* of a contract and therefore a claimant has ten years to file such a claim. *See Oberle v. Monia*, 690 S.W.2d 840, 844 (Mo.App.1985). Defendants have not requested equitable relief. They seek damages for breach, not enforcement. Accordingly, Section 516.120 RSMo 1994 controls, and defendants' counterclaim is subject to a five year statute of limitations. Howev-

er, the time for plaintiff's performance of the agreements varied. The July 25, 1978 Licensing Agreement provided:

> 2. The [Association] agrees and contracts to develop the aforementioned Oak Bluff Preserve Neighborhood Marina by erecting within one (1) year of the conveyance of said tract to [Association] a boat dock ... with two (2) pedestrian access ramps ... and further agrees to maintain said marina perpetually after construction....
>
> ....
>
> 5. Within one (1) year of the conveyance of the land as heretofore provided in paragraph 1, [Association] agrees to clear and thereafter maintain a channel in Peruque Creek ... said channel to be cleared and dredged to a depth to permit use by boat owners; said channel to be maintained during periods of normal flow to a width of eight (8) feet and a depth of sixteen (16) inches so as to permit the free navigation of craft suitable to these waters.
>
> 6. [Defendants] agree to dedicate to [Association], by plat restriction, a flood easement for the purpose of maintaining Lake Saint Louis and Peruque Creek along its meander through Oak Bluff Preserve for the purposes of preventing soil erosion; facilitating lake management; and enhancing conservation and recreation improvements....

The tract of land was conveyed by Warranty Deed dated December 27, 1978. On October 4, 1984, Oak Bluff Preserve Limited Partnership filed suit for specific performance of Association's obligations to construct the marina and clear the channel. That suit was dismissed on January 5, 1990 for failure to prosecute.

On June 29, 1994, Association filed the present lawsuit for unpaid assessments. Defendants' answer alleged Association's breaches of the Licensing Agreement relieved them from the payment of yearly association assessments. They counterclaimed for breach damages on the grounds previously detailed.

Section 516.100 RSMo 1994 provides:

> Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained.

■ Within the meaning of Section 516.100, damage is sustained and capable of ascertainment when it can be discovered or made known, even though the amount of damages is unascertained. *Modern Tractor & Supply Co. v. Leo Journagan Const. Co., Inc.,* 863 S.W.2d 949, 953 (Mo.App. S.D.1993).

■ The damage resulting from Association's failure to clear the channel within one year after the December 27, 1978 conveyance was capable of ascertainment on December 28, 1979. It is on that date, defendants' cause of action for Association's failure to clear the channel accrued. Accordingly, defendants' December 12, 1995 counterclaim for that breach would be barred by either the five or ten year Statute of Limitations. Association's continuing duty to maintain a clear channel never arose because the channel was never cleared. That part of the claim of error fails.

■ Association contends defendants' allegation that it failed and refused to properly *construct* the marina, the pedestrian ramps and the marina grounds is similarly barred because those damages were ascertainable one year after the conveyance. However, a Marina was built. In their counterclaim, defendants alleged Association failed to *properly* construct the Marina. It may not have been built as agreed, but it was built. Damages for failure to construct, as agreed, are barred. Missouri recognizes the " 'continuing or repeated wrong rule'." *Vogel v. A.G. Edwards & Sons, Inc.,* 801 S.W.2d 746, 755 (Mo.App.1990) (citing *Davis v. Laclede Gas Co.,* 603 S.W.2d 554, 556 (Mo. banc 1980)(fur-

ther citations omitted)). Under this rule, "each continuation or repetition of wrongful conduct may be regarded as a separate cause of action for which suit must be brought within the period beginning with the occurrence." *Vogel*, at 755 (citing Note, *Developments in the Law: Statutes of Limitations*, 63 Harvard Law Review 1177, 1205 (1950)(further citation omitted)). A failure to maintain is a continuing wrong. The continuing wrong rule was adopted by our supreme court in *Davis v. Laclede Gas Co.*, 603 S.W.2d 554 (Mo. banc 1980). It there decided:

> [I]f the wrong done is of such a character that it may be said that all of the damages, past and future, are capable of ascertainment in a single action so that the entire damage accrues in the first instance, the statute of limitation begins to run from that time. If, on the other hand, the wrong may be said to continue from day to day, and to create a fresh injury from day to day, and the wrong is capable of being terminated, a right of action exists for the damages suffered within the statutory period immediately preceding suit.

*Id.* at 556.

The wrong alleged is Association's failure to *maintain* the marina, the two ramps and the marina grounds. The failure to maintain is a wrong which continues from day to day, it creates a fresh injury from day to day, and it is capable of being terminated. Accordingly, a cause of action exists for damages suffered for failure to maintain the existing marina. Damages may be claimed for the five year period immediately preceding the filing of the counterclaim.

Respondent's motion to supplement record is denied. We affirm in part, reverse and remand only on the counterclaim issue of failure to maintain the marina. Costs are assessed one-half to each party.

RHODES RUSSELL, P.J., and SIMON, J., concur.