**TWIN CHIMNEYS HOMEOWNERS ASSOCIATION, Plaintiff/Respondent,**

v.

**J.E. JONES CONSTRUCTION CO., et al., Defendants/Appellants.**

No. ED 82976.

Missouri Court of Appeals, Eastern District, Division One.

April 12, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 30, 2005.

Application for Transfer Denied Aug. 30, 2005.

Gary Edward Snodgrass, William Stuart Thomas—co-counsel, St. Louis, MO, for Howard Chilcutt, Jones Company Custom Homes, Inc, and J.E. Jones Construction Company.

Martin John Buckley, St. Louis, MO, for Howard Chilcutt, Jones Company Custom Homes, Inc, and J.E. Jones Construction Company, Lloyd Potts and Steve Mullen.

Robert Engel Tucker, St. Louis, MO, for Twin chimneys Homeowners Associations.

Gary Phillip Paul, Clayton, MO, for J.L. Mason of Missouri, Inc.

Kevin Paul Schnurbusch, St. Louis, MO, for Dave Kolb Grading, Inc.

SHERRI B. SULLIVAN, J.

*Introduction*

J.E. Jones Construction Company (J.E. Jones) and Jones Company Custom Homes, Inc. (Custom Homes) (collectively Jones Company) and Howard Chilcutt

(Chilcutt) (collectively Appellants) appeal from a trial court judgment entered upon a jury verdict in favor of Twin Chimneys Homeowners Association (the Association) and against Jones Company in the amount of $13,960 for damages based on negligence and against Jones Company and Chilcutt in the amount of $987,940 for damages based on breach of fiduciary duty. We affirm.

*Factual and Procedural Background*

In 1988, J.L. Mason of Missouri, Inc. (J.L. Mason) began construction of the Twin Chimneys subdivision (the Subdivision). After construction of the infrastructure began, J.L. Mason determined that it needed a partner in the Subdivision project, and it approached J.E. Jones. In November 1988, J.L. Mason and J.E. Jones entered into a joint venture agreement, forming Twin Chimneys Partnership, to purchase real property and sell single family developed lots.

In January 1989, Twin Chimneys Partnership and Lloyd L. Potts (Potts), Steven A. Mullen (Mullen), Homer Clark (Clark), and Chilcutt entered into an Indenture of Trust governing the Subdivision, wherein Potts, Mullen, Clark and Chilcutt consented to serve as original Trustees. Potts and Mullen were affiliated with J.L. Mason. Clark and Chilcutt were employees of J.E. Jones. The Indenture of Trust included the following general provision:

The Trustees are authorized to act through a representative, provided, however, that all acts of the Trustees shall be agreed upon by at least a majority of said Trustees. No Trustee shall be held personally responsible for his or her wrongful acts, and no Trustee shall be responsible for the wrongful acts of others. No Trustee shall be held personally liable for injury or damage to persons

or property by reason of any act or failure to act of the Trustees, collectively or individually.... The owners of the Lots and other parcels shall indemnify and hold the Trustees harmless from and against any and all liability, loss, damage, costs and expense, including reasonable attorney's fees and court costs which the Trustees may suffer or incur solely by the reason of being Trustees hereunder or by reason of any action taken by the Trustees in good faith believed to be in the best interests of the Owners.

The parties also entered into a Subindenture of Trust (sometimes referred to as Subindenture or Subindenture Agreement), which included a general provision substantially the same as the one quoted above. The Subindenture of Trust also provided that the Trustees had ownership and control of the common property within the Subdivision and were responsible for the maintenance of the common property.

The construction of the lakes, monuments, and irrigation system within the Subdivision was completed by 1990. In 1991, J.L. Mason went out of business and J.E. Jones took over the Twin Chimneys Partnership. J.H. Berra was hired to replace J.L. Mason as general contractor to complete the infrastructure for the individual lots within the Subdivision.

In August 1992, Custom Homes, formed in 1989, bought all of the assets of J.E. Jones. An Amendment to the Subindenture of Trust identified Custom Homes as the successor to J.E. Jones.

On March 24, 1999, the Association filed a Petition for Damages, asserting one count of negligence against J.E. Jones and one count of breach of fiduciary obligation against Potts, Mullen, Clark, and Chilcutt.[1]

---

1. Subsequently, J.E. Jones and the original

Trustees filed a Suggestion of Death for Clark,

Subsequently, the Association filed a Second Amended Petition, adding J.L. Mason and Custom Homes as defendants and adding one count each of breach of contract and promissory estoppel. The Second Amended Petition also divided the negligence claim into three counts, one each relating to the lakes, the entrance monuments, and the sprinkler system.

Potts and Mullen filed motions for directed verdict at the close of the Association's case, which the trial court sustained. Accordingly, the court entered judgments in favor of Potts and Mullen and against the Association.

After a trial of about two and a half weeks, the jury returned the following verdicts: (1) in favor of Jones Company and J.L. Mason on the Association's claim of negligence in constructing the lakes; (2) in favor of Jones Company on the Association's claim of negligence in constructing the irrigation system; (3) in favor of the Association and against Jones Company for damages based on negligence in constructing the entrance monument lighting in the amount of $13,960; and (4) in favor of the Association and against Jones Company and Chilcutt for damages based on breach of fiduciary duty in the amount of $987,940. The trial court entered a judgment in accordance with the jury verdicts.

### Discussion

■ Appellants raise eight points on appeal. In their first point, Appellants argue that the trial court erred in denying their motions for directed verdict and for judgment notwithstanding the verdict (JNOV), or, in the alternative, for new trial because the Association did not have standing to bring the claims raised in the Second Amended Petition in that there were no allegations in the pleadings or evidence at trial showing that the Association was the owner of the common ground of the Subdivision and therefore, the Association was not the real party in interest to prosecute the cause of action.

■ The standard of review of a trial court's denial of motions for directed verdict and judgment notwithstanding the verdict are treated the same. *Erdman v. Condaire, Inc.*, 97 S.W.3d 85, 88 (Mo.App. E.D.2002). In reviewing a trial court's denial of a motion for JNOV, the primary inquiry is whether the plaintiff has made a submissible case. *Id.* To make a submissible case, a plaintiff must present substantial evidence for every fact essential to liability. *Id.* In determining whether a plaintiff made a submissible case, we view the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff. *Id.* The standard of review for the denial of a motion for new trial is abuse of discretion by the trial court. *Echard v. Barnes–Jewish Hosp.*, 98 S.W.3d 558, 567 (Mo.App. E.D.2002). A new trial will be available only upon a showing that trial error or misconduct of the prevailing party incited prejudice in the jury. *Id.*

■ Under Rule 52.01,[2] a civil action must be prosecuted in the name of the real party in interest. The purpose of this rule is to enable those who are interested in the subject matter of the suit and entitled to the benefits of the litigation to be those who maintain the action. *Boyer v. Sinclair & Rush, Inc.*, 67 S.W.3d 627, 635 (Mo.App. E.D.2002). Clearly, the Association was the real party in interest to pur-

and the trial court granted a Motion for Involuntary Dismissal filed by Clark after the Association failed to file a timely Motion for Substitution.

2. All rule references are to Mo. R. Civ. P.2004, unless otherwise indicated.

sue this cause of action, as it is the one entitled to the benefits of the litigation against Appellants. Appellants performed substandard work on the common areas, promised to repair, and did not. The residents were induced to purchase property in the Subdivision in part because of the lakes, working irrigation system and monuments. When these inducements turned out to be defective or non-functioning, and Appellants promise to fix them but do not, the residents, whether in the form of the Association or individual resident trustees, most certainly have standing to bring suit against Appellants. As we said in *Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc.*, 737 S.W.2d 206, 215–216 (Mo.App. E.D. 1987):

> Defendants' argument that Association lacks standing is untenable for practical considerations as well. Two interests are conveyed in a condominium or in a home located within a homeowners' association development: a dwelling on one hand and a proportionate share of the common elements on the other. Concepts of Liability in the Development and Administration of Condominium and Home Owners Associations, 12 Wake Forest L.Rev. 915, 961 (1976). Frequently, the common amenities are highlighted in the developer's marketing and sales program. The common elements, however, present unique problems. *Id.* The first problem is that many owners buy into a development at a stage when much of the construction of the common elements is unfinished. *Id.* The second problem is the sheer size and complexity of the investigation which would be required to assure an individual owner that the common areas are complete and fit for the use for which they were intended. *Id.* In this context, the condominium or home owners association takes on a critical role as a representative of the individual owners.... As a result, the powers of an association are extensive with regard to enforcing the common rights of all owners.

In the instant case, the Association, incorporated pursuant to the Subindenture and comprised of resident trustees of the Subdivision, was the real party in interest to bring a civil action against Appellants for negligence and breach of fiduciary duty with regard to the common areas of the Subdivision. Therefore, the trial court correctly denied Appellants' motions for directed verdict, JNOV and new trial based on lack of standing.

Accordingly, Appellants' point I on appeal is denied.

■ In their second point on appeal, Appellants argue that the trial court erred in entering judgment against Appellants because the trust documents upon which the Association based its cause of action released Chilcutt from liability for the damages sought by the Association as a matter of law in that the Indenture and Subindenture of Trust and Restrictions for the subdivision provide that no trustee shall be held personally liable for injury or damage to property by reason of any act or failure to act of the trustees collectively or individually. If Chilcutt is not liable, he asserts, then neither is Jones Company because its liability was predicated solely on Chilcutt's liability as an agent for Jones Company.

Appellants made this point in their respective motions for directed verdict which were denied by the trial court. The standard of review for a denial of those motions is set forth in our discussion of Point I. The Indenture of Trust included the following general provision:

> The Trustees are authorized to act through a representative, provided, however, that all acts of the Trustees shall

be agreed upon by at least a majority of said Trustees. No Trustee shall be held personally responsible for his or her wrongful acts, and no Trustee shall be responsible for the wrongful acts of others. No Trustee shall be held personally liable for injury or damage to persons or property by reason of any act or failure to act of the Trustees, collectively or individually. . . . The owners of the Lots and other parcels shall indemnify and hold the Trustees harmless from and against any and all liability, loss, damage, costs and expense, including reasonable attorney's fees and court costs which the Trustees may suffer or incur solely by the reason of being Trustees hereunder or by reason of any action taken by the Trustees in good faith believed to be in the best interests of the Owners.

The Subindenture of Trust included a general provision substantially the same as the one quoted above.

 Although exculpatory clauses in contracts releasing an individual from his or her own future negligence are disfavored, they are not prohibited as against public policy. *Alack v. Vic Tanny Intern. of Missouri, Inc.*, 923 S.W.2d 330, 334 (Mo.banc 1996). However, contracts exonerating a party from acts of future negligence are to be strictly construed against the party claiming the benefit of the contract, and clear and explicit language in the contract is required to absolve a person from such liability. *Id.* It is a well-established rule of construction that a contract provision exempting one from liability for his or her negligence will never be implied but must be clearly and explicitly stated. *Id.*

We do not believe the above clause clearly and explicitly releases the trustees, including Chilcutt, from their own breaches of fiduciary duty. Further, although

there was no finding by the jury that Chilcutt's actions were willful or intentional, i.e., to support an award of punitive damages, Chilcutt admitted that, as owner and an officer of Jones Company, any money spent by Jones Company would have affected him personally. Addressing the explicit concerns of the residents about the lakes, which Chilcutt admittedly did not do, by excavating massive amounts of material from the lakes would have cost the developers, including the Jones Company, a lot of money. We do not believe the exculpatory clauses above encompass this sort of conflict of interest and breach of fiduciary duty.

Accordingly, Appellants' point II on appeal is denied.

In their third point on appeal, Appellants argue that the trial court erred in submitting Instruction 24 and in refusing to submit Chilcutt's proposed Instructions A and B because Instruction 24 was prejudicially defective in that it: (1) failed to hypothesize sufficient facts to guide the jury in determining whether or not a breach of fiduciary duty occurred; (2) failed to define what constituted a fiduciary duty; (3) failed to hypothesize that Chilcutt had committed some specific act or omission that constituted a breach of fiduciary duty; (4) allowed the jury to return a verdict against one individual for the actions of the entire Board of Trustees without showing that Chilcutt was the alter ego of the Board; and (5) constituted a roving commission in that it submitted a broad, general proposition to the jury without requiring findings as to specific facts and elements.

 Whether or not a jury was properly instructed is a question of law. *Moore ex rel. Moore v. Bi–State Development Agency*, 87 S.W.3d 279, 293 (Mo.App. E.D.2002). A proper instruction submits

only the ultimate facts, not evidentiary details, to avoid undue emphasis of certain evidence, confusion, and the danger of favoring one party over another. *Id.*, see also Rule 70.02(b).[3] The test is whether the instruction follows the substantive law and can be readily understood by the jury. *Id.* When reviewing claimed instructional error, we view the evidence most favorably to the instruction, disregard contrary evidence, and reverse where the party challenging the instruction shows that the instruction misdirected, misled, or confused the jury, and there is a substantial indication of prejudice. *Id.*

Instruction 24 submitted to the jury was a not-in-MAI instruction. It provides as follows:

Your verdict must be for Plaintiff Twin Chimneys Homeowners Association and against Defendant Howard Chilcutt on Plaintiff's claim of breach of fiduciary duty if you believe:

First, Defendant Chilcutt was a subdivision trustee with control over and responsibility for maintaining, repairing, and rebuilding the common elements of the subdivision, specifically the lakes, entrance monument lighting and irrigation system, and

Second, either Defendant Chilcutt failed to exercise control with respect to the maintenance, repair or rebuilding of the lakes and siltation controls, or Defendant Chilcutt failed to exercise control with respect to the maintenance, repair or rebuilding of the entrance monument lighting, or Defendant Chilcutt failed to exercise control with re-

spect to the maintenance, repair or rebuilding of the irrigation system, and

Third, Defendant Chilcutt in any one or more of the respects submitted in paragraph Second, thereby failed to act in the best interests of the homeowners or failed to act in a manner which placed the interest of the homeowners above those of his employer, and

Fourth, as a direct result Plaintiff sustained damage.

We find that this instruction adequately followed the substantive law on breach of fiduciary duty and hypothesized the ultimate facts necessary to establish Chilcutt's fiduciary duty and breach thereof. The ultimate facts were that Chilcutt failed in his fiduciary duty as trustee, as set out in the Subindenture Agreement, to maintain and repair the common areas, specifically the lakes, irrigation system, and/or monuments. Instruction 24 was based on and specifically tracked the language of the Subindenture Agreement delineating a trustee's duties. The Subindenture Agreement also defined trustees as "those persons designated" as trustees, including Chilcutt.

■■■■ Appellants' arguments that whether Chilcutt should have insisted that Jones Company should have repaired the common areas and what specific acts or omissions of Chilcutt constituted liability should have been included in Instruction 24 are incorrect because findings of detailed evidentiary facts are not to be submitted to the jury. *Moore*, 87 S.W.3d at 293. Rather, jurors should be credited

---

**3.** 70.02(b) Form of Instructions. Whenever Missouri Approved Instructions contains an instruction applicable in a particular case that the appropriate party requests or the court decides to submit, such instruction shall be given to the exclusion of any other instructions on the same subject. Where an MAI must be modified to fairly submit the issues in a particular case, or where there is no applicable MAI so that an instruction not in MAI must be given, then such modifications or such instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts.

with ordinary intelligence, common sense, and an average understanding of the English language. *Stalcup v. Orthotic & Prosthetic Lab, Inc.*, 989 S.W.2d 654, 659 (Mo.App. E.D.1999) (rejecting defendant's argument that instruction specify a particular act or omission on the part of the lab that had caused improper fit of plaintiff's prosthetic leg).

Appellants also argue that the authority of the board to act belonged collectively to the board and not to individual trustees, and therefore Instruction 24 should have required a finding that each trustee had responsibility for repairing the common ground. Instruction 24 does require a finding that Chilcutt "was a subdivision trustee with control over and responsibility for maintaining ... the common areas."

■■■■ Appellants further argue that there was no legally sufficient basis for finding that Chilcutt breached his fiduciary duties and proximately caused the Association's damages. This argument goes beyond the prejudicially defective instructional error asserted in Appellants' point relied on, in that it raises the issue of whether Instruction 24 should have been given at all based on the evidence at trial. In any event, we view all the evidence in the light most favorable to the submission of an instruction, *First State Bank of St. Charles, Missouri v. Frankel*, 86 S.W.3d 161, 173 (Mo.App. E.D.2002), and find that the evidence was sufficient for the jury to find that Chilcutt, as an individual trustee, had a duty to maintain and repair the common areas, and that he breached his duty by failing to take the necessary action to have the common areas maintained and/or repaired and thus proximately caused the damages suffered by plaintiff.

■■■■ Appellants also maintain that the jury should have been instructed on the elements of fiduciary duty and should have been charged with finding whether a fiduciary duty even existed. Whether a trustee is a fiduciary is not a matter for the fact finder. A trustee is a fiduciary of the highest order and is required to exercise a high standard of conduct and loyalty in administration of the trust. *John R. Boyce Family Trust v. Snyder*, 128 S.W.3d 630, 636 (Mo.App. E.D.2004).

■■■■ Appellants complain that Instruction 24 was a "roving commission." A jury instruction becomes a "roving commission" when it assumes a disputed fact or proffers an abstract legal question allowing the jury "to roam freely through the evidence and choose any facts which suited its fancy or its perception of logic" and impose liability. *Scanwell Freight Exp. STL, Inc. v. Chan*, 2004 WL 612869, *2 (Mo.App. E.D. 2004). In the instant case, Instruction 24 did neither. If an instruction fails to notify the jury of "what acts or omissions of the party, if any, found by them from the evidence, would constitute liability, then it may be considered a roving commission." *Id.* In this case, Instruction 24 specifically notified the jury of what acts or omissions by Chilcutt, if found by the jury from the evidence, would constitute liability. Instruction 24 limited these acts or omissions to the ultimate facts, and not detailed evidentiary facts, as prohibited by Rule 70.02(b).

Based on the foregoing, we find that the trial court did not err in submitting Instruction 24. Appellants' point III on appeal is denied.

In their fourth point on appeal, Appellants argue that the trial court erred in submitting Instruction 26 and in refusing to submit Jones Company's proposed Instruction H because Instruction 26 did not correctly state the law of agency in that it permitted the jury to return a verdict against Jones Company if it found that Chilcutt was acting within the scope of his

employment at the time and it did not require the jury to find that Jones Company exerted control or had the right to control the actions of Chilcutt in his capacity as a trustee. Thus, Instruction 26 permitted the jury to return a verdict against Jones Company without finding all of the elements necessary to hold Jones Company liable for the actions of Chilcutt as its employee.

The standard of review for the submission of an instruction is set forth in our discussion of the previous point.

■ Instruction 26 reads as follows:

In your verdict you must find Defendant J.E. Jones Construction Company and Defendant The Jones Company Custom Homes, Inc. responsible for any breach of fiduciary duty of Defendant Chilcutt as submitted in Instruction 24 if you believe Chilcutt was acting within the scope and course of his employment with Defendant J.E. Jones Construction Company or Defendant The Jones Company Custom Homes, Inc.

Acts were within the "scope and course of employment" as that phrase is used in this instruction even though not specifically authorized by Defendant J.E. Jones Construction Company or the Jones Company Custom Homes, Inc. if:

1. they were done by Chilcutt to further the business interests of Defendant J.E. Jones Construction Company or The Jones Company Custom Homes, Inc. under the general authority and direction of Defendant J.E. Jones Construction Company or The Jones Company Custom Homes, Inc.

and

2. they naturally arose from the performance of Chilcutt's work.

Instruction 26 is a not-in-MAI instruction because it is a combination of MAI instruction 18.01, verdict director where agency is at issue, and 13.02, which defines the scope and course of employment in the context of intentional torts. Appellants objected to Instruction 26 because it did not require the jury to find Jones Company controlled the actions of Chilcutt as a trustee. Appellants suggested that an instruction submitting the "dual purpose" acts definition of agency, patterned after MAI 13.03, would be more appropriate, and submitted refused Instruction H.

■ An instruction submitting the "dual purpose" acts definition of agency would not have been appropriate in this case because the "dual purpose" doctrine is inapplicable. The dual purpose doctrine provides that if an employee's work requires travel, the employee is deemed to be in the course of his employment although he may have been attending to a simultaneous personal purpose. *Williams v. ServiceMaster*, 907 S.W.2d 193, 194 (Mo. App. W.D.1995), *Tuttle v. Muenks*, 964 S.W.2d 514, 518 (Mo.App. W.D.1998). Here, Chilcutt's serving as a trustee for the Association was part of his duty as an employee of the Jones Company. Serving as trustee was not incidental to his employment, nor was he attending to some simultaneous personal purpose in serving as trustee.

For the foregoing reasons, Appellants' point IV on appeal is denied.

In their fifth point on appeal, Appellants argue that the trial court erred in denying Jones Company and Chilcutt's motions for judgment notwithstanding the verdict, or, in the alternative, motion for new trial because the trial court misapplied the applicable statute of limitations, Section 516.120, in that more than five years had passed since the Association was aware of its right to sue. Alternatively, the jury's verdict on the breach of fiduciary duty claim, Verdict D, was against the weight of the evidence because the jury's damage

award did not limit damages to the period specified by the statute of limitations as instructed by the trial court.

The standard of review for the denial of a motion for JNOV is set forth in our discussion of Point I.

Section 516.120 [4] provides that claims of negligence and breach of fiduciary duty are governed by a five-year statute of limitations. Section 516.100 provides that:

[a] cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage than the last item, so that all resulting damage may be recovered, and full and complete relief obtained.

The Association filed its petition for damages on March 29, 1999, asserting negligence and breach of fiduciary duty.

▉▉▉▉ Appellants maintain that at trial, the Association presented the testimony of about 13 residents of the subdivision. Those who lived in the subdivision prior to 1994 offered testimony that problems first appeared as early as 1990, and at the very latest, in 1993. Appellants claim that those who served on the homeowner's advisory board testified that they notified Appellants about the problems as early as 1990 and 1991, nine years before taking legal action against Appellants. Thus, conclude Appellants, we should find the Association's damages were capable of ascertainment at least eight years before the Association filed suit, well outside the statute of limitations time period.

The trial court held that the Association's action was brought within the applicable statute of limitations because the last element of damage was the under-excavation of the lakes, which was only discovered and capable of ascertainment by the Association on March 30, 1998. We discern no error in this finding, which was based on expert testimony and a report by SCI provided to the Association on that date opining that Lake A was underexcavated by up to 8 feet. Despite what some of the residents noticed about how muddy, etc. the lakes were in the early 1990s, Appellants present no evidence that they knew the lake was underexcavated prior to the issuance of the report. Therefore, we find no error in the trial court's holding.

▉▉▉▉ Additionally, Appellants' failure to maintain the common areas was a continuing wrong. Missouri recognizes the "continuing or repeated wrong rule." *Lake St. Louis Community Ass'n v. Oak Bluff Preserve*, 956 S.W.2d 305, 309 (Mo. App. E.D.1997). Under this rule, each continuation or repetition of wrongful conduct may be regarded as a separate cause of action for which suit must be brought within the period beginning with the occurrence. *Id.* at 310. A failure to maintain is a continuing wrong. *Id.* The continuing wrong rule was adopted by our state's Supreme Court in *Davis v. Laclede Gas Co.*, 603 S.W.2d 554 (Mo.banc 1980). It there decided:

[I]f the wrong done is of such a character that it may be said that all of the damages, past and future, are capable of ascertainment in a single action so that the entire damage accrues in the first instance, the statute of limitation begins to run from that time. If, on the other hand, the wrong may be said to continue from day to day, and to create a fresh injury from day to day, and the wrong is capable of being terminated, a right of action exists for the damages suffered

---

4. All statutory references are to RSMo 2000.

within the statutory period immediately preceding suit.

*Id.* at 556.

The wrong alleged is Appellants' failure to maintain the common areas. The failure to maintain is a wrong which continues from day to day, it creates a fresh injury from day to day, and it is capable of being terminated. See, e.g., *Lake St. Louis Community Ass'n*, 956 S.W.2d at 310. Accordingly, a cause of action exists for damages suffered for failure to maintain the common areas, and damages may be claimed for the five-year period immediately preceding the filing of the petition. See *Id.*

In conjunction with the continuing wrong theory, we also note that the developer trustees continually promised through 1996 that the common areas would be remedied. The developers asserted that the lakes should not be repaired until the subdivision was complete, because during construction silt would continue to flow into the lakes. However, nothing was ever fixed or remedied. Only at the time did the Association know for certain that the developer trustees were not going to make repairs or that they no longer had the ability to do so, were their damages recoverably certain.

Where the potentiality of future harm is not clear, however, limitations should not run until damages become recoverably certain. Thus, the possibility that the defendant may remove the harmful condition or cease his wrongful conduct, or that injury may not result, may prevent the recovery of full prospective damages, so that the period limiting an action to recover for such damage does not begin prior to its maturation. Since the amount of future harm will vary with the extent of the later wrongful conduct, recovery is permitted only for that portion of the wrong whether it be affirmative conduct or a failure to act which has occurred within the statutory period immediately preceding suit.

*Davis,* 603 S.W.2d at 556, quoting with approval, *Developments in the Law Statutes of Limitation,* 63 Harv.L.Rev. 1177, 1205 (1950).

Appellants also assert that the trial court erred in not granting its motion for a new trial based on the jury's verdict on damages in the amount of $987,940.00. We only review the trial court's decision not to grant a new trial for abuse of discretion. *Echard,* 98 S.W.3d at 567. In determining whether the evidence was sufficient to support the jury's verdict, we view the evidence in the light most favorable to the result reached by the jury, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict. *Giddens v. Kansas City Southern Ry. Co.,* 29 S.W.3d 813, 818 (Mo.banc 2000). We generally defer to the jury's decision as to the amount of damages. *Id.* at 822. This is as it should be because the determination of the amount of damages is a task that lay juries are particularly able to perform. *Id.*

Appellants claim that it is clear from the amount of the verdict that the jury did not limit its award to those damages accrued within five years prior to the filing of the suit, as set forth in *Lake St. Louis Community Ass'n,* 956 S.W.2d at 310, and the jury did not heed the trial court's instruction to limit their award of damages to those accrued after March 1994.

We disagree that it is so clear. The jury's award of only $987,940.00 did not show that they disregarded the court's instruction to limit their damages to post-March 1994. The Association's engineering expert Morris Berk (Berk) testified that in 2003, the cost to correct the lake

problems was $2,500,000.00. The Association's second engineering expert, Don Eskridge (Eskridge), who had been involved in designing lakes and detention basins, opined that Berk's cost estimate was fair and reasonable. There was testimony that if the lakes were not excavated to the proper depth, and if only the silt was removed from the lakes, the problem would recur. Appellants have not convinced us that the jury's verdict was against the weight of the evidence. Accordingly, Appellants' point V on appeal is denied.

■ In their sixth point on appeal, Appellants argue that the trial court erred in submitting Instructions 18 and 28, instructing the jury to enter an award based on a "cost of repair" measure of damages, and in refusing to submit Jones Company's proposed Instruction I on diminution in value because the narrow cost of repair exception to the general rule regarding the proper measure of damages to property is inapplicable to this case in that the Association did not adduce any evidence of diminution in value of the homes or that the cost of repair damages were significantly less than the diminution in value.

Again, the standard of review for instructional error is set forth in our discussion of Point III.

Instructions 18 and 28 provide:

Instruction 18

If you find in favor of Plaintiff, you must award the Plaintiff such sum as you may find from the evidence to be the reasonable cost of repair of any damage to the entrance monument lighting.[5]

Instruction 28

If you find in favor of Plaintiff, then you must award the Plaintiff such sum as you may find from the evidence to be the reasonable cost of repair of any damage to the lakes, entrance monument lighting and irrigation system.

■ The general rule is that the measure of damages for tortious injury to real property is the difference in fair market value of the property before and after the injury or the cost of restoring the property, whichever is the lesser amount. *Leonard Missionary Baptist Church v. Sears, Roebuck and Co.*, 42 S.W.3d 833, 836 (Mo. App. E.D.2001). However, there is an exception to the general rule of fair market value for certain categories of property that are not bought and sold on the open market. *Id.* at 837. For certain categories of property, termed "special purpose property," such as the property of non-profit, charitable, or religious organizations, there will not generally be an active market from which the diminution in market value may be determined. *Id.* at 836. This is true of such properties as school yards, church yards, college campuses, buildings under construction, and cemeteries. *Id.*

In the instant case, the property at issue is the common grounds of the Subdivision. The Association's expert witness, Albert Westover (Westover), a real estate appraiser, testified that he knew of no other comparable property that had ever sold in the open market in the St. Louis Metropolitan area. Westover stated that a market value could not be placed on the common ground in the Subdivision because there is no market for the common areas, because the common areas are interior parcels within a residential area that are an integral part of the subdivision, the common areas are surrounded by single-family resi-

---

**5.** Similar instructions were submitted to the jury regarding damage to the lakes and irriga- tion system.

dences, are not set off or at the edge of the property so as to be usable by an adjacent property owner. For these reasons, cost of repair as opposed to fair market value was the appropriate measure of damages in this case, and it was not error for the trial court to submit Instructions 18 and 28. Accordingly, Appellants' point VI on appeal is denied.

In their seventh point on appeal, Appellants argue that the trial court erred in admitting Exhibit 116, a memo from Francis Godwin (Godwin), a civil engineer and non-retained expert, regarding who was responsible for the lakes' siltation problems and in admitting into evidence and sending to the jury Chapter 405 of the O'Fallon Municipal Code because the admission of this evidence was unfairly prejudicial in that the memorandum and related testimony invaded the province of the jury, was outside the scope of Godwin's expertise, and was not produced in discovery despite being subpoenaed, and the municipal code was irrelevant to the issues in the case and was not in effect at the time of the construction of the subdivision.

■■■■ The admission or exclusion of evidence, especially expert evidence, is a matter of trial court discretion. *IMR Corp. v. Hemphill,* 926 S.W.2d 542, 546 (Mo.App. E.D.1996). We review only for a manifest abuse of discretion. *Id.* A ruling within the trial court's discretion is presumed correct and the appellant bears the burden of showing the trial court abused its discretion and that they have been prejudiced by the abuse. *Id.*

At trial, Godwin testified that he had worked for the City of O'Fallon for approximately eleven years, and had served in the capacities of Senior Plan Reviewing Engineer, construction inspector, chief of construction, and city engineer. He personally performed inspections of the Sub-

division and supervised other employees who did so.

■■■■ The memo dated May 29, 1998 by Godwin to Benny Hedden (Hedden), Director of Public Works in O'Fallon, was in response to Hedden's request that Godwin review the O'Fallon file on the Subdivision and make some determinations of the cause of the lake sedimentation problems. Appellants objected to Godwin's closing remarks in the memo that "the information on file suggests it was the developer and the builder who were responsible" for the lake's problems. Appellants maintain that the remarks invaded the province of the jury in determining who was at fault. However, the remarks do not encompass any of the ultimate issues decided by the jury. The ultimate issues to be determined were whether the defendant trustees breached their fiduciary duties as delineated in the Subindenture, to maintain and repair the common areas of the Subdivision. Who was responsible for the problems with the common areas was not an ultimate issue for the jury. Its only relevance would be to the Association's claim for negligent construction of the lakes, but the jury found in favor of Appellants on that claim. As such, admission of the memo did not invade the province of the jury and was not error. We also note that the parties had equal access to the memo, and the Association is not responsible if Appellants failed to receive the memo upon subpoena of the City of O'Fallon.

■■■■ Appellants also complain about the admission of Chapter 405 of the Municipal Code of O'Fallon, which required city approval for modification to the design and construction of the development because the section of the code read to the jury was not in effect at the time of the construction of the lakes.

Section B of Chapter 405, dated January 2001 states, in pertinent part, that:

Installation and construction shall conform to the approved engineering drawings. However, if the developer chooses to make minor modifications in design, and/or specifications during construction, he or she shall make such changes at his or her own risk without any assurance that the city engineer will approve the completed installation or construction. It shall be the responsibility of the developer to notify the city engineer of any changes from the approved drawings.

Godwin testified the requirements in that particular section read to the jury had been in effect since Godwin began working with the City of O'Fallon eleven years earlier. Appellants do not dispute this testimony. Further, Appellants also used Chapter 405 in the presentation of their case. Appellants also argue that the section, which merely addresses the procedure for approval by the City of O'Fallon, was irrelevant to the issue of whether certain elements of the Subdivision were improperly constructed or maintained by the developers.

Although we do not find the section to be especially relevant to the Association's claims of negligence and for punitive damages, we cannot go so far as to deem it irrelevant. At any rate, its admission was not so prejudicial to Appellants as to amount to a manifest abuse of discretion.

For the foregoing reasons, Appellants' point VII on appeal is denied.

In their eighth point on appeal, Appellants argue that the trial court erred in allowing homeowner witnesses to testify regarding their interpretation of statements made by Clark, who was deceased, and their subjective perceptions and feelings about the lakes because this testimony was unfairly prejudicial and materially affected the outcome of the trial in that it was irrelevant and speculative.

The standard of review for the admission of evidence is set forth in our discussion of the previous point.

■ Appellants identify the testimony of Tim Egan (Egan), who testified in response to the question, "[w]ere you ever at any meetings where anybody from the Jones Company made assurances about correcting the defects?" that Clark had promised him that "we will take care of this." Appellants claim that there was no evidence as to whether Clark, an employee of Jones Company and a trustee, used "we" to mean Jones Company or to mean the trustees.

However, Egan did not speculate as to whether Clark meant Jones Company or the trustees. He merely stated what Clark had said to him. Furthermore, on cross examination Appellants asked Egan if Clark had specified who "we" was and Egan said no. There was no prejudice here.

Appellants argue that comments like Egan's allowed the jury to believe certain promises were made on behalf of Jones Company when those promises were not made. However, there was plenty of evidence that the residents were relying on, and had been reassured by, the developer trustees that the problems with the common areas would be resolved. The jury was able to interpret the evidence presented to them on this issue, and could certainly reasonably conclude that Clark's promises to repair the lakes were made on behalf of Jones Company.

■ Appellants complain that Egan's statement was not given to them in response to an interrogatory that clearly asked for such information, and thus they were unfairly surprised at trial. However, there was plenty of evidence giving Appellants notice that residents had claimed

that the trustee developers, including Clark, had reassured them that the common areas would be fixed. There is no prejudice to Appellants when there is cumulative evidence on an issue. See *Anuhco, Inc. v. Westinghouse Credit Corp.*, 883 S.W.2d 910, 930 (Mo.App. W.D.1994).

■ Appellants also claim that the admission of homeowner statements in regard to their perceptions of the lakes was unfairly prejudicial. Some residents testified that they thought the lakes were beautiful and added a lot to the Subdivision; some testified that the lakes turned into muddy ponds. This testimony was relevant because the residents purchased homes in the Subdivision in part because of the amenities and it described the condition of the lakes at the beginning and as they eroded. The condition of the lakes was a central issue in the case. The relevance of this testimony clearly outweighed any possible prejudice to Appellants.

Accordingly, Appellants' point VIII on appeal is denied.

### Conclusion

The judgment of the trial court is affirmed.

GARY M. GAERTNER, SR., P.J., and KATHIANNE KNAUP CRANE, J., concur.