# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3601

_____

| | | |
|---|---|---|
| J.E. Jones Construction Co.; The Jones Company Custom Homes, Inc., Now known as REJ Custom Homes, | * * * * | |
| Plaintiffs - Appellants, | * * | |
| v. | * * | Appeal from the United States District Court for the |
| Chubb & Sons, Inc., | * * | Eastern District of Missouri. |
| Defendant, | * * | |
| Federal Insurance Company; Great Northern Insurance Company, | * * * | |
| Defendants - Appellees. | * | |

_____

Submitted: March 15, 2007
Filed: May 11, 2007

_____

Before RILEY, BOWMAN, and ARNOLD, Circuit Judges.

_____

BOWMAN, Circuit Judge.

J.E. Jones Construction Company and Jones Company Custom Homes, Inc. (collectively, "Jones") filed this suit alleging that Great Northern Insurance Company and Federal Insurance Company were obligated to indemnify Jones for liability incurred in an underlying state-court lawsuit. After cross-motions for summary

judgment, the District Court[1] granted summary judgment in favor of Great Northern and Federal, finding that the applicable insurance policies did not provide coverage for the state-court judgment. For the reasons discussed below, we affirm the judgment of the District Court.

I.

Great Northern issued Jones a commercial general liability (CGL) insurance policy that provided:

> **Coverage**. *Bodily Injury, Property Damage, Advertising Injury, And Personal Injury.* Subject to the applicable Limits Of Insurance, we will pay damages the **insured** becomes legally obligated to pay by reason of liability imposed by law or assumed under an **insured contract** for: **bodily injury** or **property damage** to which this insurance applies caused by an **occurrence** . . . .

J.A. at 97 (emphasis in original). The policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 113.

Federal issued Jones an excess liability insurance policy, which provided both excess liability coverage and umbrella liability coverage. The excess policy provided coverage for a loss that exceeded the amount of the CGL policy limit. The excess policy did not, however, provide coverage for a loss that the CGL policy did not provide coverage for in the first instance.

---

[1]The Honorable Mary Ann L. Medler, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

Jones argues that these policies provide coverage for Jones's liability incurred in the state-court suit, Twin Chimneys Homeowners Ass'n v. J.E. Jones Construction Co., 168 S.W.3d 488 (Mo. Ct. App. 2005). In that case, Jones entered into a partnership with another builder to sell developed lots within a subdivision. The partnership entered into an Indenture of Trust that governed the subdivision with, among others, Howard Chilcutt, whereby Chilcutt agreed to serve as a trustee. Under a separate Subindenture of Trust, the trustees had ownership and control of the subdivision's common property and were responsible for its maintenance. The subdivision's homeowners association sued Jones and the trustees, alleging negligence and breaches of fiduciary duty associated with the construction and maintenance of the subdivision. The jury found Jones negligent in constructing an entrance monument and awarded damages in the amount of $13,960. The jury also determined that Chilcutt breached a fiduciary duty by allowing siltation to flow into lakes and awarded damages in the amount of $987,940. Jones was held liable for Chilcutt's breach because Chilcutt was acting within the scope of his employment with Jones. The trial court entered judgment and the Missouri Court of Appeals affirmed.

Great Northern indemnified Jones for the damages associated with the negligence claim, but both Great Northern and Federal denied coverage for damages associated with the breach-of-fiduciary-duty claim. Jones filed this lawsuit, invoking the court's diversity jurisdiction, and sought a declaratory judgment that Great Northern and Federal were obligated to indemnify Jones for the breach-of-fiduciary duty claim. The District Court held that Great Northern and Federal had no obligation to indemnify Jones because the underlying breach of fiduciary duty was not an "occurrence" as defined in the CGL policy; therefore, coverage did not apply. Jones appeals, contending that the policies do cover the underlying breach of fiduciary duty. Jones also challenges the District Court's exclusion of two affidavits from the summary-judgment record.

II.

We first consider the District Court's exclusion of the affidavits. In support of its motion for summary judgment, Jones offered the affidavits of Chilcutt and of Jones's attorney, J. Vincent Keady. The District Court excluded Chilcutt's affidavit on the ground that it was irrelevant to this case. The court excluded Keady's affidavit on the grounds that it was irrelevant to this case and that it contained inadmissible evidence of settlement negotiations, see Fed. R. Evid. 408. We review the District Court's exclusion of this evidence for abuse of discretion. Yates v. Rexton, Inc., 267 F.3d 793, 802 (8th Cir. 2001).

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Evidence which is not relevant is not admissible." Fed R. Evid. 402.

In Chilcutt's affidavit, he stated that another trustee had the "day to day responsibility for addressing subdivision concerns . . . resolved all issues raised by homeowners . . . [and] had the authority to make decisions regarding homeowner complaints and issues without seeking approval or ratification of his decision from the other three trustees." J.A. at 272–73. Chilcutt also stated that he "never directly received any complaints from the homeowners regarding the lakes and/or siltation," and that he did not "intend to inflict harm or injury to the Twin Chimneys residents or property." Id. at 273. We agree with the District Court that these statements merely attempt to re-litigate whether Chilcutt breached his fiduciary duty, an issue that was decided in the underlying litigation. See Twin Chimneys, 168 S.W.3d at 499. We also agree that the statements are not relevant to the issue in this case—whether the policies cover the underlying breach of fiduciary duty. Accordingly, we hold that the District Court did not abuse its discretion in excluding Chilcutt's affidavit.

-4-

In Keady's affidavit, he stated that Great Northern and Federal made a settlement offer during the underlying suit. While Jones argues that this evidence should not be excluded by Rule 408, Jones fails to explain how this evidence is relevant to this case. We cannot discern how this evidence is relevant to the coverage issue; therefore, we hold that the District Court did not abuse its discretion in excluding Keady's affidavit.

## III.

We now turn to the merits of the parties' cross-motions for summary judgment. We review the grant of summary judgment de novo. Bradley v. James, 479 F.3d 536, 537 (8th Cir. 2007). Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Id.

The parties disagree about what the issue is in this case. Jones argues that the issue is whether the lake siltation constitutes an "occurrence." Great Northern and Federal argue that the issue is whether the breach of fiduciary duty constitutes an "occurrence." Jones's argument that the siltation should be considered the "occurrence" confuses the injury ("property damage") with the cause ("occurrence"), contrary to the CGL policy language ("property damage to which this insurance applies *caused* by an occurrence," J.A. at 97 (emphasis added)). The plain language of this policy and the facts of the underlying case show that the siltation is the "property damage" that obligated Jones to pay damages. See Twin Chimneys, 168 S.W.3d at 499. And in the underlying case, Chilcutt's breach caused this damage. Id. Thus, the issue in this case is whether the siltation was caused by an "occurrence" as defined by the policy, i.e., whether the breach of fiduciary duty qualifies as an "occurrence."

State law controls the construction of insurance policies when a federal court has jurisdiction based on diversity of citizenship. Langley v. Allstate Ins. Co., 995 F.2d 841, 844 (8th Cir. 1993). The parties do not dispute that Missouri law applies to this case. Under Missouri law, the claimant has the burden to show that the policy covers the loss. Am. States Ins. Co. v. Mathis, 974 S.W.2d 647, 649 (Mo. Ct. App. 1998). Missouri courts interpret insurance policies according to their plain meaning, giving words the meaning that would ordinarily be understood by a layperson who purchased the policy. Ware v. Geico Gen. Ins. Co., 84 S.W.3d 99, 102 (Mo. Ct. App. 2002). Where an insurance policy defines an "occurrence" as meaning an "accident," the term "accident" is given its common meaning:

> An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event. Hence, often, an undesigned and unforseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; a casualty; as to die by an accident.

Hawkeye-Security Ins. Co. v. Davis, 6 S.W.3d 419, 425 (Mo. Ct. App. 1999) (citations and quotations omitted).

Courts applying Missouri law have not addressed whether a breach of fiduciary duty constitutes an "occurrence" according to this framework. Courts have consistently held, however, that where the underlying cause of loss is a breach of contract, the breach of contract is not an "occurrence" according to the applicable definition of "occurrence." See, e.g., Hartford Ins. Co. of the Midwest v. Wyllie, 396 F. Supp. 2d 1033, 1038 (E.D. Mo. 2005); Davis, 6 S.W.3d at 426; Mathis, 974 S.W.2d at 650 (collecting cases). The rationale for these decisions is that because the performance of a contract is within the insured's control, a breach of that contract cannot qualify as an "accident" and therefore cannot be an "occurrence." Davis, 6 S.W.3d at 426; Mathis, 974 S.W.3d at 650. A Missouri court has also held that a breach of warranty is not an occurrence where the insured's failure to perform was

within his control.  Davis, 6 S.W.3d at 426.  Conversely, Missouri courts have held that negligent acts may qualify as "occurrences."  See Wood v. Safeco Ins. Co. of Am., 980 S.W.2d 43, 49–50 (Mo. Ct. App. 1998) (collecting cases); but see Cincinnati Ins. Co. v. Venetian Terazzo, Inc, 198 F. Supp. 2d 1074, 1079 (E.D. Mo. 2001) (holding that insured's negligence was not an "occurrence").

In the circumstances of this case, we hold that the underlying breach of fiduciary duty was not an "accident" and therefore not an "occurrence" within the meaning of the CGL policy.[2]  The applicable jury instruction in the underlying action is instructive:

> Your verdict must be for Plaintiff Twin Chimneys Homeowners Association and against Defendant Howard Chilcutt on Plaintiff's claim of breach of fiduciary duty if you believe:
> First, Defendant Chilcutt was a subdivision trustee with *control* over and responsibility for maintaining, repairing, and rebuilding the common elements of the subdivision, specifically the lakes, entrance monument lighting and irrigation system, and
> Second, either Defendant Chilcutt failed to exercise *control* with respect to the maintenance, repair or rebuilding of the lakes and siltation controls, or Defendant Chilcutt failed to exercise control with respect to the maintenance, repair or rebuilding of the entrance monument lighting, or Defendant Chilcutt failed to exercise control with respect to the maintenance, repair or rebuilding of the irrigation system, and
> Third, Defendant Chilcutt in any one or more of the respects submitted in paragraph Second, thereby failed to act in the best interests of the homeowners or failed to act in a manner which placed the interest of the homeowners above those of his employer, and
> Fourth, as a direct result Plaintiff sustained damage.

---

[2]We express no opinion on whether other breaches of fiduciary duty may qualify as an "occurrence" under this policy language.

Twin Chimneys, 168 S.W.3d at 498 (emphasis added). The Missouri Court of Appeals held that this instruction "adequately followed the substantive law on breach of fiduciary duty . . . " and that "Chilcutt failed in his fiduciary duty as trustee, as set out in the Subindenture Agreement, to maintain and repair the common areas, specifically the lakes, irrigation system, and/or monuments." Id. Since Chilcutt was acting in his capacity as agent, Jones was held liable for this breach. Id. at 500.

Because the fiduciary breach was based on Chilcutt's duties as set forth in the Subindenture of Trust, this breach was the result of deficient performance that was within his control. And because Chilcutt had agreed to maintain the lakes, his failure to do so was not an "unforseen" or "unexpected event." This breach therefore was not an "accident" or an "occurrence."[3] Thus, Jones cannot meet its burden of proving coverage under the policies.

IV.

For the reasons discussed, the judgment of the District Court is affirmed.

_____

---

[3]Jones, citing N. W. Electric Power Cooperative, Inc. v. American Motorists Insurance Co., 451 S.W.2d 356 (Mo. Ct. App. 1969), contends that because no intent to injure has been shown in this case, the resulting harm was caused by an "accident." That case is distinguishable, however, as it involved policy language different from the policy language in this case and limited its holding to its circumstances. Id. at 359, 362.