**Ronald GALLAGHER, et al.,**
**Plaintiffs/Appellants,**

v.

**DAIMLERCHRYSLER**
**CORPORATION,**
**Defendant/Respondent.**

**No. ED 87953.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 7, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 12, 2007.

Application for Transfer Denied
Dec. 18, 2007.

Paul E. Kovacs, David G. Ott, Jeffery T. McPherson, Cynthia A. Petracek, St. Louis, MO, for appellants.

Maureen A. McGlynn, Joseph B. McGlynn, Jr., St. Charles, MO, Colvin G. Norwood, Jr., New Orleans, LA, for respondent.

LAWRENCE E. MOONEY, Judge.

The plaintiffs appeal the judgment of the Circuit Court of the City of St. Louis following a jury verdict in favor of the defendant, DaimlerChrysler Corporation. The plaintiffs include the survivors of Josephine Gallagher and Barbara Sandheinrich, who both died when the DaimlerChrysler minivan in which they were riding was involved in a roll-over accident. The other plaintiffs, Susan Wichmann, Barbara Goerss, and Annetta Rainey, were also passengers in the minivan and suffered injuries. The plaintiffs sued DaimlerChrysler under theories of strict liability, negligence, breach of warranty, and misrepresentation for the wrongful death of Mrs. Gallagher and Mrs. Sandheinrich and for the personal injuries of Mrs. Wichmann, Mrs. Goerss, and Mrs. Rainey. After entry of judgment for DaimlerChrysler, the plaintiffs filed a motion for new trial, which was denied. On appeal, the plaintiffs claim that the trial court erred in denying their motion for new trial, in admitting a video prepared by a defense witness, and in admitting comparative accident statistics. Because we find no abuse of discretion, we affirm the judgment of the trial court.

### Facts

On the morning of June 22, 2002, the five women named above, along with Barbara Hantak and Nancy McCarthy,[1] were traveling in a rented 2002 DaimlerChrysler Town & Country minivan. The seven women were long-time friends returning to St. Louis after visiting Florida. Mrs. Hantak was driving the minivan north on Interstate 65 along a stretch of dry, straight, level road near Cullman, Alabama. Mrs. Hantak testified that she assumed she "was tired" and that she "was falling asleep or mesmerized by the car, the road in front of [her]." The minivan drifted off the right side of the road at about seventy miles per hour and traveled several hundred feet through the grass alongside the highway. One of the passengers called her name and alerted Mrs. Hantak to their perilous situation. Mrs. Hantak steered sharply to the left, to bring the minivan back onto the highway at about seventy miles per hour, and then steered sharply to the right. The physical evidence indicated that Mrs. Hantak never regained control of the vehicle after returning to the

---

1. Mrs. McCarthy was never a party to this action.

road. The minivan then slid along the highway while beginning a clockwise rotation. As it slid sideways along the highway at approximately fifty to 55 miles per hour, the minivan tipped onto its left side. The minivan ultimately rolled four-and-one-quarter times, leaving the right side of the road, rolling down an embankment, and coming to rest on its left side at the tree line parallel to the highway. Mrs. Gallagher and Mrs. Sandheinrich, who were seated on the right side of the minivan, suffered major head injuries and died at the accident scene. Mrs. Wichmann, Mrs. Goerss, and Mrs. Rainey sustained injuries of varying severity. Mrs. Hantak and Mrs. McCarthy escaped injury.

The plaintiffs filed suit against Mrs. Hantak and DaimlerChrysler, alleging theories of negligence against both defendants as well as strict liability, breach of warranty, and misrepresentation against Daimler-Chrysler.[2] The plaintiffs claimed that the minivan was defective in that it possessed handling characteristics that made it unreasonably difficult to control under normal driving conditions and that it had a propensity to roll over. The plaintiffs averred that the vehicle lacked electronic-stability control, that it lacked a crashworthy roof, that it lacked adequate seatbelts and adequate airbags with roll-over sensors to activate these passenger-restraint systems, and that it lacked proper window glazing. They also asserted that DaimlerChrysler failed to provide sufficient warnings and instructions regarding these hazards, that DaimlerChrysler marketed the minivan in a misleading fashion, and that DaimlerChrysler failed to recall the minivan when it knew of these defects and conditions. The plaintiffs sought both actual and punitive damages from DaimlerChrysler, which the plaintiffs insisted sold the minivan despite knowing it was defective and presented an unreasonable risk of loss and great bodily harm.

In the year preceding trial, the parties engaged in multiple discovery disputes over many of the plaintiffs' 143 discovery requests. In late October 2005, ten days before trial began, the plaintiffs pursued their discovery requests in earnest. They filed multiple motions to compel and motions for sanctions immediately before and during trial. In response to the plaintiffs' motions and the trial court's orders, DaimlerChrysler continued to produce large quantities of documents through the fifth week of trial. The opposing lawyers argued over production of documents concerning other roll-over accidents involving DaimlerChrysler minivans; documents concerning DaimlerChrysler vehicles with certain stability, roll-over-sensing, and passenger-restraint features; documents concerning the "NS" minivan body style, which preceded the "RS" body style of the vehicle involved in this action; and documents concerning DaimlerChrysler's Safety Leadership Team.

The trial lasted six weeks. More than fifty witnesses, including more than a dozen engineers and other technical experts, testified, resulting in a transcript of 4,505 pages. The plaintiffs settled their claims against Mrs. Hantak on the last day of trial. After deliberating for just two hours

---

2. The plaintiffs originally sued DaimlerChrysler Corporation, DaimlerChrysler Motors Corporation, DaimlerChrysler North America Holding Corporation, Thrifty Rent A Car System, Inc., Rental Car Finance Corporation, C and J Rental, Inc., and Barbara Hantak. The plaintiffs dismissed their claims against Thrifty Rent A Car System, Inc., Rental Car Finance Corporation, and C and J Rental, Inc. without prejudice in July 2003. The plaintiffs' second amended petition filed in June 2005 did not name DaimlerChrysler Motors Corporation and DaimlerChrysler North America Holding Corporation as defendants, and thus the plaintiffs abandoned their claims against these two defendants.

and five minutes, the jury returned a verdict for the remaining defendant, DaimlerChrysler, and the trial court entered judgment in favor of DaimlerChrysler. The plaintiffs filed a timely motion for new trial, alleging numerous trial-court errors. The court denied the plaintiffs' motion, and this appeal follows.

## Discussion

The plaintiffs claim three points of error. First, they assert the trial court erred in denying their motion for a new trial in view of multiple alleged discovery violations by DaimlerChrysler. Second, the plaintiffs argue the trial court erred in admitting a video showing a minivan undertaking various driving maneuvers, which a defense witness prepared after his deposition. Finally, the plaintiffs contend the trial court erred in admitting comparative accident statistics. We shall consider each of the plaintiffs' complaints in turn.

### Plaintiffs' Request for a New Trial as a Sanction for DaimlerChrysler's Discovery Violations

In their first point on appeal, the plaintiffs claim the trial court erred in denying their motion for new trial. The plaintiffs allege that DaimlerChrysler "pursued a policy of calculated failure to respond to discovery," which denied the plaintiffs a fair trial because DaimlerChrysler engaged in "piecemeal" document production up to the fifth week of the six-week trial. The plaintiffs claim that DaimlerChrysler produced 15,000 pages of documents and 452 videos during trial, which the plaintiffs had to evaluate while simultaneously trying the case. DaimlerChrysler counters that the plaintiffs failed to promptly respond to its timely discovery objections and that its failure to respond to one set of discovery was due to an honest error, which it immediately corrected upon receiving notice of its oversight. DaimlerChrysler also argues that the plaintiffs failed to show prejudice.

 We review the trial court's denial of a motion for new trial for abuse of discretion. *Kehr v. Knapp*, 136 S.W.3d 118, 122 (Mo.App. E.D.2004). We will reverse the trial court's decision only where we find a substantial or glaring injustice. *Id.* In this case, the plaintiffs seek a new trial as a discovery sanction against DaimlerChrysler. The trial court is vested with broad discretion to control discovery and to choose a remedy to address any non-disclosure of evidence. *Zimmer v. Fisher*, 171 S.W.3d 76, 79 (Mo.App. E.D.2005). Here too, we will not disturb the trial court's ruling unless we find a clear abuse of that discretion. *Id.* An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances before the court at the time and is so unreasonable and arbitrary that it shocks one's sense of justice and indicates a lack of careful consideration. *Id.*

 We hold that the trial court did not abuse its discretion when it denied the plaintiffs' motion for a new trial. Supreme Court Rule 61.01(d) provides that a trial court may impose sanctions on a party who fails to produce documents or who timely objects to a request for production but then fails to produce the documents after the court overrules the objection. Before imposing sanctions on a party for discovery violations, the trial court must determine that the opposing party has suffered prejudice in the particular situation. *Spacewalker, Inc. v. Am. Family Mut. Ins. Co.*, 954 S.W.2d 420, 423–24 (Mo.App. E.D.1997). The moving party must prove its allegations to obtain sanctions pursuant to Rule 61.01. *Id.* at 424.

The parties strongly contest the sufficiency of *DaimlerChrysler's* responses to the plaintiffs' discovery requests, with the

plaintiffs filing several motions to compel and motions for sanctions before and during trial. The plaintiffs filed motions to compel in September 2004 and May 2005; these motions focused on interrogatories and requests for production concerning Mercedes–Benz vehicles that Daimler-Chrysler AG produced in Germany.[3] The parties resolved the first dispute by consent, and they apparently settled the second dispute prior to trial because we find nothing in the record as to any further action taken by the plaintiffs.

In June 2005, the plaintiffs filed a motion to compel concerning its fifth request for production of documents. The trial court ordered DaimlerChrysler to produce certain documents about 76 lawsuits and 48 other claims involving roll-overs of DaimlerChrysler minivans (the "other similar incidents"). The plaintiffs filed another motion to compel after a dispute arose as to whether DaimlerChrysler should ship to St. Louis the fifty boxes of documents produced in response to the court's order. The record is again silent as to any further action concerning shipment of the documents.

On October 21, 2005, ten days before trial, the plaintiffs filed a motion for sanctions. The plaintiffs claimed that DaimlerChrysler failed to produce certain documents concerning the other similar incidents and that DaimlerChrysler produced these documents only when the plaintiffs scheduled depositions of persons involved in the other incidents. As a sanction against DaimlerChrysler, the plaintiffs asked the trial court to: 1) shift the burden of proving substantial similarity between the instant accident and the other similar incidents from the plaintiffs to DaimlerChrysler, thus requiring DaimlerChrysler to prove that the other similar incidents were *not* substantially similar to the instant case; 2) order DaimlerChrysler to produce witnesses to testify at deposition as to all steps taken to comply with the court's June 10, 2005 discovery order; 3) instruct the jury that DaimlerChrysler violated the June 10, 2005 order and withheld critical documents concerning the other similar incidents and that the jury could draw an adverse inference therefrom; and 4) order such other relief as the court deemed just and proper. Three days later, the plaintiffs filed another motion to compel concerning their third and sixth requests for production. The plaintiffs claimed that DaimlerChrysler had failed to supplement its response to the plaintiffs' third request for production with documentation about stability-control and safety features incorporated into the 2006 Dodge Durango and Jeep Commander. The plaintiffs also complained that DaimlerChrysler failed to respond to the plaintiffs' sixth request for production, which response was due in April 2005.[4] DaimlerChrysler conceded that its response to the sixth production request was extremely late, but claimed it honestly but erroneously believed it had served its earlier response on the plaintiffs. DaimlerChrysler contended that the October 2005 motion to compel was the only notice it received about its lack of response.

The trial court heard the plaintiffs' motions for sanctions and to compel four days before trial. Noting that this was the first time the parties had brought the dispute surrounding the other similar incidents to the court's attention, the trial court instructed the parties to attempt to resolve the production issues that day, and the

---

**3.** DaimlerChrysler AG was never a party to this lawsuit.

**4.** *See* Supreme Court Rule 58.01(b).

parties reached an agreement. However, the plaintiffs claimed that the materials DaimlerChrysler provided did not contain documents within the agreed parameters. Consequently, on November 9, 2005, during the second week of trial, the court ordered DaimlerChrysler to search for and produce certain documents concerning its decisions to implement particular features on its vehicles to ensure its full compliance with the plaintiffs' third and sixth requests for production.

On November 18, 2005, the court again heard arguments on the plaintiffs' motions for sanctions and to compel.[5] The parties primarily disputed the production of documents concerning DaimlerChrysler's Safety Leadership Team and the "NS" minivan, the predecessor to the "RS" body-style minivan at issue in this case. On November 21, 2005, the plaintiffs filed another motion to compel seeking "more complete answers" to multiple discovery requests. In the last week of November and the fifth week of trial, the court allowed the plaintiffs to obtain documentation about window glazing from counsel in an unrelated case against DaimlerChrysler. The court also granted the plaintiffs' motion to compel production of documents and computer disks concerning DaimlerChrysler's Safety Leadership Team. On December 9, 2005, the court ruled that it would permit the plaintiffs to recall Dr. Dean Jacobson, the plaintiffs' expert on the roof- and glass-integrity issues, in light of documents produced by DaimlerChrysler throughout trial "and perhaps as a partial response to Motions for Sanctions."

In denying the plaintiffs' motion for new trial, the trial court found that Daim-lerChrysler had not demonstrated a contumacious and deliberate disregard for the court's authority, which would justify a sanction of the magnitude of a new trial. The court also found there was no outcome-determinative prejudice to the plaintiffs. The plaintiffs allege that DaimlerChrysler's "piecemeal" discovery responses required the plaintiffs to devote substantial time and energy to obtaining discovery and incorporating it into their case while they simultaneously tried the case. However, the plaintiffs point to no precise instance in which the late production of documents affected presentation of their case to the jury.

Furthermore, as we noted, the trial court did not deny the plaintiffs any remedy for DaimlerChrysler's discovery practices. Near the end of trial, the court noted DaimlerChrysler's failure to comply with the discovery rules and allowed the plaintiffs to recall Dr. Jacobson for further testimony in light of documents recently produced. The plaintiffs did not seek to recall any other witnesses. The trial court had discretion to choose the remedy for the defendant's failure to comply with discovery rules. *Zimmer*, 171 S.W.3d at 79. The court properly exercised its discretion in selecting this remedy during trial and was not obliged to grant the plaintiffs' motion for new trial.

■ Further, numerous considerations support the trial court's finding that the plaintiffs suffered no outcome-determinative prejudice. DaimlerChrysler rebutted each of the plaintiffs' experts who testified concerning the minivan's stability, passenger-restraint systems, roof integrity, and

**5.** The record contains references to plaintiffs' second and third motions for sanctions, but the legal file does not contain the motions and the court minutes do not reflect their filing. We cannot glean from the record all of the precise sanctions the plaintiffs sought, al-though we discern that the plaintiffs sought production of documents concerning DaimlerChrysler's Safety Leadership Team and a jury instruction to draw an adverse inference concerning the alleged lack of document production in certain areas.

window glazing. The plaintiffs' handling-and-stability expert, Robert Anderson, was gravely impeached when he admitted on cross-examination that he had misinterpreted test data and that tests of the DaimlerChrysler minivan did not indicate the van was unstable; in fact, Mr. Anderson conceded that he would recommend the DaimlerChrysler minivan from a stability standpoint based on those tests.

DaimlerChrysler countered the testimony of the plaintiffs' restraint-systems expert, Gerald Rosenbluth, by identifying discrepancies in his reported test results and the results depicted in Mr. Rosenbluth's photographs of his testing. DaimlerChrysler also introduced evidence refuting Mr. Rosenbluth's assertion that, at the time of this accident, other vehicles possessed roll-over-sensor technology, which can activate various passenger-restraint systems. DaimlerChrysler expert Robert Banks, an engineer and physician with experience investigating aircraft accidents and resulting injuries for the military and NASA, testified that no seat-belt system presently exists that can keep an occupant clear of the side structures of the vehicle in this type of accident. Defense experts also countered the plaintiffs' claims that a stronger roof and different window glazing would have protected the passengers. For example, Dr. Banks testified that the passengers' fatal head injuries did not involve the roof or the window glazing. Rather, the passengers sustained these injuries when they struck the window as their side of the vehicle struck the unyielding road surface at one-and-three-quarter rolls.

In addition, the jury easily could have ascribed the accident to the driver's negligence in leaving the road, rather than to any defect in the minivan. DaimlerChrysler's accident reconstructionist and comparative-statistics expert, Dr. Michelle Vogler, testified that the physical evidence indicated that the driver never regained control of the minivan after she brought it back onto the roadway. The jury could also have attributed the plaintiffs' injuries to the nature of the accident. Dr. Vogler explained that an accident such as this one, where a vehicle rolls four-and-one-quarter times, is "highly infrequent" and at the "very upper end of roll counts." In fact, Dr. Vogler's exhibits demonstrated that accidents involving three-and three-quarter rolls or more constitute only 0.09 percent of all single-vehicle roll-over accidents and that the risk of fatal or severe injury in accidents with four or more rolls is at or near 100 percent. Finally, the jury clearly found the plaintiffs' evidence to be unconvincing. After a six-week trial, the jury deliberated for only two hours and five minutes before returning its verdict for DaimlerChrysler.

As the party asserting error, the plaintiffs have the burden of persuasion. *Cousin's Adver., Inc. v. Bd. of Zoning Adjustment*, 78 S.W.3d 774, 781 (Mo.App. W.D. 2002). The plaintiffs have the burden to demonstrate precisely how DaimlerChrysler's late discovery responses negatively affected their presentation to the jury. This they have not done. Although we are troubled by DaimlerChrysler's handling of discovery and believe that the plaintiffs encountered hardship in dealing with late discovery of this magnitude during trial, the plaintiffs simply have not established any real prejudice due to the dilatory production of discovery. Again, the plaintiffs fail to identify on appeal how the dilatory production adversely affected the conduct of the trial. They do not identify a single fact that they would have proved. They do not point to a single action they were prevented from taking. They do not name a single witness they would have called. They do not assert any change they would have made in examining any witness. And

they do not posit any change in strategy they would have made.

The plaintiffs urge us to reverse the trial court's decision and thereby send a message to Missouri's trial attorneys that abusive discovery practices will not be tolerated. That is not the message we send. While abusive discovery is indeed abhorrent, the message we send is that we are committed to our standard of review. We do not simply second-guess a trial judge's arbitration and assessment of discovery disputes. Here, the trial judge arbitrated the discovery disputes within the range of reason. And in denying the plaintiffs' motion for new trial, the trial judge concluded that "the delay [in production] did not affect the outcome of the trial" and that DaimlerChrysler did not show "a contumacious and deliberate disregard for the court's authority, which would warrant the granting of a new trial." The trial judge is in a far superior position to arbitrate discovery disputes and to assess prejudice. Because we find no abuse of the trial court's discretion, we deny the plaintiffs' first point.

### Plaintiffs' Objections to the Driving-maneuvers Video

In their second point, the plaintiffs assert that the trial court erred in denying the plaintiffs' motion to exclude testimony and an accompanying video prepared by defense witness John Sahakian. The plaintiffs contend that Mr. Sahakian, DaimlerChrysler's supervisor of vehicle dynamics for the minivan platform, prepared the video of a minivan performing various driving maneuvers after his deposition, in which he had testified that he would conduct no further testing. On appeal, the plaintiffs claim they were prejudiced because they were denied the opportunity to prepare for this evidence by deposing Mr. Sahakian about the test, examining the minivan used in the test, and determining the testing conditions. They also claim prejudice in that the video showed a minivan of the same model as the minivan in this case, weighted to simulate a full load of seven passengers with luggage, as present at the time of this accident. DaimlerChrysler counters that the video was prepared simply to illustrate for the jury the various handling maneuvers, which Mr. Sahakian described during his testimony and that all DaimlerChrysler minivans undergo during development. The parties disagree over the fundamental nature of the video. The plaintiffs claim the video depicts a test, which required Mr. Sahakian to supplement his deposition and to seasonably provide the video to the plaintiffs. DaimlerChrysler maintains that the video does not depict a test because DaimlerChrysler did not gather information for development purposes, but rather that the video simply illustrated Mr. Sahakian's testimony. But even if we construe the video to be a test, such that DaimlerChrysler should have supplemented Mr. Sahakian's deposition, we still must resolve the ultimate question: did the trial court abuse its discretion in allowing the video and testimony in evidence?

A trial court has broad discretion to admit or exclude evidence, *Intertel, Inc. v. Sedgwick Claims Mgmt. Servs., Inc.*, 204 S.W.3d 183, 195 (Mo.App. E.D. 2006), and we presume that a ruling within the trial court's discretion is correct. *Twin Chimneys Homeowners Ass'n v. J.E. Jones Const. Co.*, 168 S.W.3d 488, 504 (Mo. App. E.D.2005). We will reverse the trial court's ruling on the admission of evidence only if the court has clearly abused its discretion. *Intertel*, 204 S.W.3d at 195. The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before it and is so arbitrary and unreasonable that the ruling shocks

the sense of justice and indicates a lack of careful deliberation. *Id.* Where reasonable persons can differ about the propriety of the trial court's action, we cannot say that the trial court abused its discretion. *Kehr,* 136 S.W.3d at 122–23. Finally, an appellant bears the burden of showing not only that the trial court abused its discretion, but also that the abuse prejudiced the appellant. *Twin Chimneys,* 168 S.W.3d at 504.

▮ First, the plaintiffs argue that the trial court abused its discretion in refusing to exclude the video and Mr. Sahakian's related testimony because Mr. Sahakian changed his opinion after deposition. The plaintiffs cite *Whitted v. Healthline Mgmt., Inc.,* 90 S.W.3d 470 (Mo.App. E.D.2002), and *Bailey v. Norfolk & W. Ry.,* 942 S.W.2d 404 (Mo.App. E.D.1997), for the proposition that the trial court should exclude expert testimony when an expert changes his or her opinion after deposition or bases an opinion on new or different factual information revealed after deposition without seasonably updating the deposition. *Bailey* and *Whitted* do not aid the plaintiffs. In each of those cases, a doctor plainly changed his opinion between deposition and trial concerning the etiology of a patient's illness or death. *Whitted,* 90 S.W.3d at 477 ("Expert's deposition and trial testimony clearly contradict each other."); *Bailey,* 942 S.W.2d at 414 ("The record supports a trial court finding [the doctor's] opinion clearly changed between the time he gave his depositions and when he testified at trial. [The doctor] agreed he had changed his opinion."). Here, Mr. Sahakian did not change his opinion nor did he base his opinion on different facts revealed after his deposition. In fact, the

plaintiffs do not point to any opinion that Mr. Sahakian rendered, either in deposition or at trial, to support their claim of error.[6] Because Mr. Sahakian did not express any change in opinion between his deposition and trial testimony, we find this argument unfounded.

▮ On appeal, the plaintiffs also claim that because DaimlerChrysler surprised them with the video, DaimlerChrysler denied them the opportunity to depose Mr. Sahakian about the circumstances of the "tests," to examine the minivan used in the video, and to determine the conditions under which DaimlerChrysler made the video. Despite these contentions, we find no indication in the record that the plaintiffs sought to depose Mr. Sahakian about the video or the conditions under which DaimlerChrysler made it. On cross-examination, the plaintiffs chose not to explore the driving maneuvers depicted or the conditions under which Mr. Sahakian performed the maneuvers. The questions the plaintiffs asked Mr. Sahakian concerning the video revealed only that Mr. Sahakian wore a crash helmet during the maneuvers, that he had engaged in professional test driving since 1972, and that he had logged a considerable number of miles in his career. The record does not show that plaintiffs at any point asked to examine the minivan used in the video, although the minivan was in St. Louis at the time. The plaintiffs had three days in which to examine the minivan, to depose Mr. Sahakian, and to prepare to cross-examine him. Mr. Sahakian first took the stand on a Friday but did not conclude his testimony, instead returning the following Tuesday to complete cross-examination.

▮ Further, the plaintiffs claim DaimlerChrysler re-created some of the

6. Our review of the record reveals only one opinion expressed by Mr. Sahakian. He maintained that the plaintiffs' contention that one should not operate a fully loaded minivan at speeds over fifty miles per hour set an "unrealistically low speed" and that a warning to this effect was not warranted.

circumstances of the accident, specifically weighting the same model of minivan to simulate a full load of seven passengers with additional cargo. We viewed the video and were troubled that the video depicted a minivan of the same model as the minivan at issue, weighted to simulate the seven occupants and their luggage in this accident. However, Mr. Sahakian's testimony that the video was not intended to duplicate the accident in this case or to duplicate any particular accident largely allays our concern. More importantly, the heart of the plaintiffs' claim is not that the demonstration replicated the conditions of the instant accident, but rather that the video came as a surprise during trial after Mr. Sahakian testified at his deposition that he planned no further testing. The plaintiffs' motions on this point make plain their claim of surprise. The plaintiffs based their motion to exclude the video on their lack of opportunity to examine Mr. Sahakian about testing conditions. At that time, they also labeled the video "irrelevant and misleading" because "the driving tests [depicted] are *not* similar to the accident sequence in this case" (emphasis added). During argument on their motion to exclude, the plaintiffs did not object that the demonstration replicated the accident's circumstances. The plaintiffs then grounded their motion for new trial on a lack of opportunity to prepare to cross-examine Mr. Sahakian or test his opinions by examining the minivan in the video. It is only on appeal that the plaintiffs complain of any similarity between the video demonstration and the accident in this case. On appeal, an appellant may not expand or change the objection voiced at trial, but must maintain a consistent theory of objection. *Zakibe v. Ahrens & McCarron, Inc.,* 28 S.W.3d 373, 387 (Mo.App. E.D.2000). The plaintiffs have not preserved their claim of improper re-creation of some of the circumstances of the accident because the plaintiffs seek to advance a different argument on appeal than that advanced in the trial court.

The plaintiffs have a high threshold to meet in order to establish an abuse of discretion in the video's admission. We reiterate that the trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before it and is so arbitrary and unreasonable that the ruling shocks the sense of justice and indicates a lack of careful deliberation. *Intertel,* 204 S.W.3d at 195. The record reveals that the trial court heard extensive argument from both parties and gave careful consideration before ultimately deciding to admit the video. Indeed, the trial judge initially excluded the video, but then changed his mind when the defendant argued that the plaintiffs' expert, Andy Irwin, changed his testimony and introduced at trial new theories buttressed by computer simulations.

In sum, Mr. Sahakian did not change his opinion after his deposition; the plaintiffs have not demonstrated how they were surprised or prejudiced by the video and his testimony; the plaintiffs have not preserved for our review whether the video impermissibly re-created some of the accident's circumstances; and the trial judge carefully deliberated the admission of this evidence on the record. Therefore, we find no abuse of discretion and we deny point two.

### Plaintiffs' Objection to Comparative Accident Statistics

 In their third point, the plaintiffs allege the trial court erred in admitting the testimony of Dr. Vogler concerning comparative accident statistics because the evidence was irrelevant and prejudicial. The plaintiffs argue that Dr. Vogler's evidence was not admissible as evidence of accidents similar to the plaintiffs' accident. DaimlerChrysler counters that Dr. Vogler's statistical risk analysis was admissi-

ble, and in fact necessary, to assist the jury in determining whether the minivan in question was unreasonably dangerous.

■ The admission or exclusion of evidence, especially expert evidence, is a matter of trial-court discretion, and we review only for a manifest abuse of that discretion. *Twin Chimneys,* 168 S.W.3d at 504. We presume that a ruling within the trial court's discretion is correct, and the appellant bears the burden of showing not only that the trial court abused its discretion but that the abuse prejudiced the appellant. *Id.*

■ Dr. Vogler presented statistics regarding the total number of motor-vehicle accidents annually in the United States, the number of roll-over accidents under all conditions, and the number of roll-over accidents for classes of vehicle. She compared the number of roll-overs for the DaimlerChrysler minivan to the number of roll-overs for other classes of vehicles and other small vans. The plaintiffs contend that Dr. Vogler's evidence was inadmissible as evidence of accidents similar to the plaintiffs' accident. But the plaintiffs opened the door to Dr. Vogler's comparative accident statistics. A party who opens a subject is deemed either estopped from objecting to its further development or deemed to have waived the right to object to further development. *Yaeger v. Olympic Marine Co.,* 983 S.W.2d 173, 187 (Mo. App. E.D.1998).

In their opening statement, the plaintiffs declared that roll-over accidents comprise two-and-one-half to three percent of all accidents and that the Dodge Caravan minivan, which DaimlerChrysler manufactures along with the Town & Country minivan, had almost 14,000 roll-over accidents between 1988 and 2000. One plaintiffs' expert, Mr. Rosenbluth,

testified that there were 13,800 single-vehicle roll-over accidents involving the Caravan minivan between 1988 and 2000. He testified that these roll-over statistics are important in informing us how the vehicle performs in the "real world." Mr. Rosenbluth opined that this number of accidents indicates a problem with DaimlerChrysler's minivan that it should have addressed.

Through its handling-and-stability expert, Mr. Anderson, the plaintiffs introduced evidence of the static-stability factor of several vehicle models, some produced by DaimlerChrysler and some by other manufacturers.[7] Mr. Anderson also testified to static-stability factor ranges, by general vehicle class, of passenger cars, sport-utility vehicles, pickup trucks, and vans. He testified to the static-stability factor of the Town & Country minivan at issue here as compared to the static-stability factors for the other vehicle classes.

By introducing general roll-over statistics, raw numbers of DaimlerChrysler minivan roll-overs, and comparative static-stability factors, the plaintiffs suggested that the DaimlerChrysler minivan was relatively unstable and had a disproportionately high number of roll-over accidents. The plaintiffs thereby sought to establish that DaimlerChrysler knew its minivan was defective, unreasonably dangerous, and presented unreasonable risk of harm. DaimlerChrysler offered Dr. Vogler's testimony to provide the jury with context for the numbers and statistics that the plaintiffs introduced. Dr. Vogler's testimony likewise provided perspective for the issue of whether the DaimlerChrysler minivan was unreasonably dangerous and whether it presented unreasonable risk of loss and great bodily harm, the latter being essential to the plaintiffs' claim for punitive damages. Dr. Vogler's testimony provided

---

**7.** A vehicle's static-stability factor is a calculation made using the vehicle's track width and

center of gravity, which seeks to quantify a vehicle's propensity to roll over.

the jury with a frame of reference for the roll-over-accident statistics and static-stability factors about which the plaintiffs' experts testified. Thus, the jury was better equipped to assess the plaintiffs' evidence and claims.

The trial court did not abuse its discretion in admitting the comparative accident statistics. Even if such evidence were normally inadmissible, which we do not reach, the plaintiffs cannot complain because they opened the door. *Yaeger,* 983 S.W.2d at 187. We deny the plaintiffs' third point.

### Conclusion

We find no abuse of discretion in the trial court's denial of the plaintiffs' motion for new trial, the court's admission of the driving-maneuvers video, or its admission of the comparative accident statistics. We affirm the judgment of the trial court.

GLENN A. NORTON, P.J., and KENNETH M. ROMINES, J., concur.