Willie HARVEY, Respondent,

v.

Eric WASHINGTON, M.D., Denise Taylor, M.D., and Wendell Williams, M.D., Appellants.

No. SC 84449.

Supreme Court of Missouri, En Banc.

Jan. 28, 2003.

D. Paul Myre, Stuart M. Haw, St. Louis, Mary L. Reitz, Kevin F. O'Malley, Theodore D. Agniel, Clayton, Thomas B. Weaver, Cynthia A. Sciuto, St. Louis, for Appellants.

Joseph A. Frank, David T. Dolan, St. Louis, for Respondent.

DUANE BENTON, Judge.

Willie Harvey sued Doctors Eric Washington, Denise Taylor, and Wendell Williams for the wrongful death of his wife, Mary Harvey. The circuit court entered judgment for $1.2 million, finding each doctor equally at fault. After opinion by the Court of Appeals, this Court granted transfer on the applications of Taylor and Williams (Washington having settled). *Mo. Const. art. V, sec. 10.* Reversed and remanded.

*I.*

On September 14, 1995, Dr. Washington performed knee-replacement surgery on decedent. Two days earlier, decedent's urine had contained an unidentified bacteria. Dr. Washington prescribed a broad-spectrum antibiotic in order to avoid infection during surgery. After surgery, the bacteria was identified as *E. coli,* which is treatable with the broad-spectrum antibiotic.

On September 16, decedent had seizures and on September 17, was examined by a neurologist—Dr. Taylor. She prescribed an anti-seizure medication. The seizures stopped.

On September 24, Dr. Washington ordered another urine test, in preparation for a second surgery. Dr. Washington also consulted a heart specialist and a kidney specialist. On September 25, the heart specialist—Dr. Williams—examined

decedent, diagnosed "active congestive heart failure," and recommended canceling surgery. The same day, the kidney specialist examined decedent and diagnosed "acute renal failure."

On September 26, decedent's condition having improved, both specialists approved surgery. Dr. Washington ordered the same broad-spectrum antibiotic to be administered during the second surgery. The results of the September 24 urine test—first available on September 26—revealed that the *E. coli* bacteria were gone. However, another type of bacteria—*Pseudomonas*—appeared, which are not treatable with the broad-spectrum antibiotic.

The next day, decedent again had seizures, and again was examined by Dr. Taylor. On September 28, the kidney specialist examined decedent, ordered another urine test, noted the seizures were "maybe" related to the kidney failure, and noted decedent "may need to be dialyzed in the next few days." The kidney specialist further recommended a different antibiotic that would treat *pseudomonas*—which decedent did not receive until October 3. Decedent continued having seizures. On September 30, decedent experienced "acute neurological deterioration." On October 1, she stopped breathing and was placed on a ventilator. On October 2, the kidney specialist put decedent on dialysis. Decedent died from multiple-system organ failure on October 21.

The court gave, at plaintiff's request, the following verdict directors:

## INSTRUCTION NO. 10

Your verdict must be for the plaintiff and against defendant Denise Taylor, M.D., if you believe:

First, defendant Denise Taylor, M.D., either:

failed to advocate for dialysis treatment for Mary Harvey's kidney failure on or before September 29, 1995, or defendant Denise Taylor, M.D., failed to prescribe Mary Harvey an antibiotic from September 26 through September 30, 1995 which would treat Mary Harvey's pseudomonas urinary tract infection, and

Second, defendant Denise Taylor, M.D. was thereby negligent, and

Third, such negligence directly caused or directly contributed to cause the death of Mary Harvey.

\* \* \*

## INSTRUCTION NO. 12

Your verdict must be for the plaintiff and against defendant Wendell Williams, M.D., if you believe:

First, defendant Wendell Williams, M.D., failed to prescribe Mary Harvey an antibiotic from September 26 through September 30, 1995, which would treat Mary Harvey's pseudomonas urinary tract infection, and

Second, defendant Wendell Williams, M.D., was thereby negligent, and

Third, such negligence directly caused or directly contributed to cause the death of Mary Harvey.

\* \* \*

The doctors appeal on two grounds: *First,* plaintiff did not prove a "but for" cause of decedent's death by either of the two failures alleged: (a) failure to prescribe an antibiotic that would treat decedent's *pseudomonas* urinary tract infection, or (b) Dr. Taylor's "failure to advocate" for dialysis treatment; *Second,* the verdict directors improperly assume the disputed fact that decedent had a *pseudomonas* urinary tract infection.

## II.

To determine whether plaintiff made a submissible case, this Court reviews the evidence in the light most favorable to the jury's verdict. See *Seitz v. Lemay Bank and Trust Co.*, 959 S.W.2d 458, 461 (Mo. banc 1998). "Insufficient evidence" means a complete absence of probative fact to support the jury's conclusion. *Id.*

### A. Urinary Tract Infection

The doctors contend that plaintiff failed to prove "but for" causation because even if the *pseudomonas* urinary tract infection had been treated with the correct antibiotic, decedent still might not have survived. The doctors quote plaintiff's expert:

Q: Now you believe that [decedent's] antibiotics should have been changed on the 26th?

A: Yes.

Q: But you can't state to a reasonable degree of medical certainty that if her antibiotics had been changed that [decedent] would not have gone on to have this event that you're talking about on the 30th, correct?

A: No. For the same reason I referred to earlier about the dialysis. I believe it was a combination of factors.

"But for" is the minimum causation because it merely proves that defendant's conduct is causally connected to the plaintiff's injury. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 862 (Mo. banc 1993). "Two causes that combine" can constitute "but for" causation. *Id.*

The general rule is that if a defendant is negligent and his [or her] negligence combines with that of another, or with any other independent, intervening cause, he [or she] is liable, although his [or her] negligence was not the sole negligence or the sole proximate cause, and although his [or her] negligence, without such other independent, intervening cause, would not have produced the injury.

*Carlson v. K–Mart Corp.*, 979 S.W.2d 145, 147 (Mo. banc 1998), quoting *Gaines v. Property Servicing Co.*, 276 S.W.2d 169, 173–74 (Mo.1955), quoting *Harrison v. Kansas City Elec. Light Co.*, 195 Mo. 606, 93 S.W. 951, 956–57 (1906), citing *Newcomb v. New York Cent. & H.R.R. Co.*, 169 Mo. 409, 69 S.W. 348, 352–53 (1902).

Plaintiff's expert testified that the *pseudomonas* urinary tract infection, combined with kidney failure, caused decedent's death. More precisely: "the [*pseudomonas* urinary tract] infection put toxins in [decedent's] system and her impaired kidney function could not clear those toxins . . . ." The expert explained:

Q: Doctor, we talked about the urinary tract infection and the renal failure and the events on October 1st. Can we separate out the issues and address each one separately and talk about what the outcome would have been if one had been treated in the absence of the others being treated?

A: I'm not able to do that. I can't take away one and say this patient would have done anything different. I can't pull one of the factors out and say—

Q: Why can't you do that?

A: Because I think the two factors are connected. They relate to one another. The urinary tract infection and the renal failure together affected the toxicity of the brain.

Plaintiff's expert concluded that the toxins caused decedent's "acute neurological deterioration" which ultimately caused her death.

Plaintiff's expert testified that each doctor had a duty to prescribe an antibiotic to treat the *pseudomonas* urinary tract infec-

tion. The expert stated unequivocally that each doctor's negligence, combined with decedent's untreated kidney failure, caused her death. Reviewing this evidence in the light most favorable to the jury's verdict, there was sufficient evidence that "two causes that combine" caused decedent's death, thus satisfying the "but for" test.

The doctors further argue that the court erred in allowing the expert's trial testimony because it substantially differs from his prior deposition. The doctors exaggerate the differences. Plaintiff's expert did not substantially contradict his deposition. Moreover, he was cross-examined about the differences at trial. Substantial deference is given the trial court's rulings on evidence unless it abused discretion. *Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo. banc 1991). No abuse of discretion occurred here.

### B. Kidney Failure

■ Dr. Taylor argues that even if she "failed to advocate for dialysis treatment . . . on or before September 29," it was not a "but for" cause of decedent's death. Dr. Taylor analogizes her role to the hypothetical of Nurse Schwarz in *Callahan:*

> On the other hand, if the doctor had another source of information as to [patient] Danny's presence and condition at the hospital, such as the medical records, then the doctor's negligence would have been independently sufficient to cause the injury to Danny. In this circumstance, Nurse Schwarz's conduct would not have met the "but for" causation test because, if the doctor already knew of Danny's condition, then Nurse Schwarz's failure to tell the doctor something that he already knew would not be causal.

*Callahan,* 863 S.W.2d at 862.

As in *Callahan,* Dr. Taylor is not liable for failure to advocate for dialysis because the kidney specialist—who was caring for decedent at all relevant times—had "another source of information" as to decedent's need for kidney dialysis. The kidney specialist diagnosed kidney failure on September 25. Plaintiff's expert testified:

> Q: Okay. If he has the information available to him as to how this patient is doing, how Mrs. Harvey is doing on the 25th, 26th, 27th, all of these times in here, Dr. Sagar is the kidney specialist who is really in the best position then to make the decision on when to start dialysis, isn't he?
>
> A: Yes.

Through urine tests and personal examination, the kidney specialist—at least by September 28—was aware that decedent's seizures could be related to kidney failure and that the decedent required dialysis "in the next few days." Because the kidney specialist's negligence was "independently sufficient," Dr. Taylor's failure to advocate for dialysis treatment fails as a "but for" cause of decedent's death.

### III.

■ This Court reviews de novo, as a question of law, whether a jury was properly instructed. See *Kuzuf v. Gebhardt,* 602 S.W.2d 446, 449 (Mo. banc 1980). It is error for a verdict director to assume a disputed fact. *Seitz,* 959 S.W.2d at 463; *Lasky v. Union Elec. Co.,* 936 S.W.2d 797, 800 (Mo. banc 1997); *Spring v. Kansas City Area Transp. Auth.,* 873 S.W.2d 224, 226 (Mo. banc 1994). The verdict is reversed if the offending instruction misdirected, misled, or confused the jury, resulting in prejudicial error. See *Seitz,* 959 S.W.2d at 463.

■ The doctors contend that the instructions assume the disputed fact that

decedent had a *pseudomonas* urinary tract infection. According to plaintiff's expert, decedent had a *pseudomonas* urinary tract infection from September 24 to October 1, and failure to treat it—after the September 26 test results were known—contributed to cause her death. The doctors (and their experts) disputed the existence of a *pseudomonas* urinary tract infection, and whether it caused decedent's death. Whether decedent had a *pseudomonas* urinary tract infection was a disputed question of fact for the jury.

 The jury was confused whether or not to find this fact. During deliberation, it asked:

> Based on the wording of instructions # 8, # 10, and # 12, is the court stating that M[ary] H[arvey] had a pseudomonas infection, or is that for the jury to decide?

The judge responded:

> The jury must be guided by the instructions as given. Please read or reread all the instructions.

A jury's question may be considered to determine whether an instruction is proper, but it is not conclusive. *Kampe v. Colom,* 906 S.W.2d 796, 806 (Mo.App.1995). Considering the jury's confusion and the conflicting testimony, it was prejudicial error to assume the existence of the *pseudomonas* urinary tract infection.

Plaintiff defends the verdict directors, claiming that the finding of the disputed fact was necessarily implied from the other required findings. See *Gathright v. Pendegraft,* 433 S.W.2d 299, 311 (Mo.1968). The "necessarily implied" exception has been narrowed in recent years. See *Lasky,* 936 S.W.2d at 800–01 (refusing to follow *Gathright* ); *Welch v. Hyatt,* 578 S.W.2d 905, 914–15 (Mo. banc 1979). Even so, plaintiff contends that the first paragraph of the verdict directors has only one

disputed fact—whether decedent had a *pseudomonas* urinary tract infection—and the verdict shows the jury necessarily found it. This is inaccurate. There was a dispute whether the doctors prescribed an antibiotic that would treat a *pseudomonas* urinary tract infection. The jury heard varying expert testimony about types of antibiotics, their effects, and who—among the various doctors treating decedent—had a duty to prescribe them. A verdict director must require the jury to find all ultimate issues or elements necessary to the plaintiff's case, except those unmistakably conceded by both parties. *Karnes v. Ray,* 809 S.W.2d 738, 741 (Mo.App.1991).

The verdict directors confused the jury by assuming a disputed fact. Thus, submission of the defective instructions constitutes prejudicial error.

## IV.

The judgment is reversed, and the case remanded for a new trial.

LIMBAUGH, C.J., WOLFF, STITH, and PRICE, JJ., and STEELE and MONTGOMERY, Sp. JJ., concur.

WHITE and TEITELMAN, JJ., not participating.