

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| SHERRY L. HUELSKAMP, | ) | No. ED100686 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Franklin County |
| vs. | ) | 10AB-CC00346 |
| | ) | |
| PATIENTS FIRST HEALTH | ) | Honorable Stanley D. Williams |
| CARE, LLC, | ) | |
| | ) | |
| Appellant. | ) | Filed:  November 12, 2014 |

Patients First Health Care, LLC ("Defendant") appeals the judgment entered upon a jury

verdict awarding Sherry L. Huelskamp ("Plaintiff") $525,000 on her medical malpractice claim

arising out of medical care provided to Plaintiff by Barbara King ("Nurse King"), a family

practice nurse practitioner employed by Defendant.  We affirm.[1]

## I.     BACKGROUND

### A.     Evidence Adduced at Trial

The following evidence was adduced at the jury trial on Plaintiff's medical malpractice

claim.

#### 1.     Plaintiff's Treatment with Nurse Neubauer

On November 7, 2008, Plaintiff saw psychiatric nurse practitioner Cathy Neubauer

("Nurse Neubauer") for depression.  On that same date, Nurse Neubauer prescribed an anti-

---

[1] We deny Plaintiff's motion to dismiss the appeal which was submitted with this case.

depressant, Lamictal, to Plaintiff. Nurse Neubauer testified that on November 7, 2008 she told Plaintiff the Lamictal could cause a rash and that if Plaintiff developed a rash she should discontinue the Lamictal and call Nurse Neubauer. Nurse Neubauer also testified she repeated this information to Plaintiff on November 21, 2008 when the medication was refilled. Plaintiff testified at trial she did not remember Nurse Neubauer giving her any warnings about taking Lamictal.

### 2. Plaintiff's Treatment with Nurse King and Plaintiff's Subsequent Injuries

Plaintiff began treatment with Nurse King, a family nurse practitioner employed by Defendant, in October 2007. On November 13, 2008, Plaintiff saw Nurse King for high blood pressure, and Plaintiff's medication list indicated she was taking Lamictal. Nurse King admitted she was aware on November 13 that Plaintiff had been prescribed Lamictal.

On November 24, 2008, Plaintiff saw Nurse King for complaints of body aches, and Nurse King prescribed an antibiotic, Amoxicillin, to Plaintiff. Nurse King admitted she was again aware that Plaintiff was taking Lamictal. However, Nurse King did not perform any further research on Lamictal at that time despite having medical resources available to do so. Additionally, Nurse King did not research the side effects of Lamictal or whether it contained any "black box" warnings regarding its use.[2] Nurse King testified it was part of her job to look up medications that she was not familiar with and that she had done so in the past. There was testimony at trial that had Nurse King reviewed the side effects of Lamictal, she would have seen Lamictal contained a black box warning which specifically cautioned of the dangers of a serious rash and the development of Stevens Johnson Syndrome and which instructed health care providers to tell patients to discontinue Lamictal upon the first signs of a rash.

---

[2] A "black box" warning is a warning issued by the Food & Drug Administration which tells health care providers there is an important safety concern with a medication which is sufficient to cause real concern about injury or death.

2

On December 4, 2008, Plaintiff called Nurse King's office with complaints of a rash, and Nurse King agreed to treat Plaintiff's rash. Nurse King concluded the rash was medication related and reviewed Plaintiff's medication list in evaluating the cause of the rash. Nurse King testified she was aware on December 4 that Plaintiff was taking Lamictal but did not know of the drug's potential side effects or that it carried a black box warning regarding serious rashes. Nurse King admitted she did nothing to learn any of the side effects of Lamictal. Nurse King opined she was only responsible for knowing the side effects of medication she prescribed for her patients as opposed to the side effects of medications her patients were taking that were prescribed by other health providers. It is undisputed that Nurse King did not instruct Plaintiff to discontinue the Lamictal on December 4. It is also undisputed that Nurse King did not instruct Plaintiff to call Nurse Neubauer to inquire as to whether she should continue taking the Lamictal. Instead, on December 4, Nurse King concluded Plaintiff's rash was related to her Amoxicillin prescription and instructed Plaintiff to discontinue the medication and take Benadryl. Plaintiff testified she complied with Nurse King's instruction to stop taking the Amoxicillin.

Six days after Plaintiff discontinued taking Amoxicillin, on December 10, 2008, Plaintiff called Nurse King again with continued complaints of a rash. Plaintiff was seen in the office and Nurse King examined the rash. Nurse King admitted that at that time she did not do anything to investigate other medications as potential causes of the rash. Instead, Nurse King prescribed a Medrol Dosepak and told Plaintiff to update her in two days. Nurse King's notes from December 10 indicate Plaintiff was still taking Lamictal. Nurse King testified she did not tell Plaintiff to stop taking the Lamictal on December 10 or to follow up with Nurse Neubauer at that time.

3

Plaintiff saw Nurse King again on December 12, 2008. Nurse King examined Plaintiff and it appeared the rash had progressively gotten worse from December 4, 2008 until December 12, 2008. Nurse King did not instruct Plaintiff to stop the Lamictal on this date or instruct Plaintiff contact Nurse Neubauer. Instead, Nurse King recommended Plaintiff see a dermatologist, Dr. Jason Reinberg, and Plaintiff saw him that same day. Dr. Reinberg noted Plaintiff was still taking Lamictal and ordered her to discontinue the Lamictal because of the relationship between the drug and rashes. Plaintiff testified she stopped taking the Lamictal on December 12, 2008 in accordance with Dr. Reinberg's instructions.

On December 14, 2008, Plaintiff went to the hospital and was diagnosed with Stevens Johnson Syndrome, a very serious and potentially deadly disease involving a rash and blistering of the skin and mucous membranes. Plaintiff was later diagnosed with Toxic Epidermal Necrolysis,[3] and she was admitted to the hospital where she remained a patient for approximately three weeks. During this time, Plaintiff's skin turned black as the Toxic Epidermal Necrolysis spread to involve ninety-eight percent of Plaintiff's body. As a result of the disease, Plaintiff incurred medical bills, lost wages, and sustained pain and suffering.

**B.     Relevant Procedural Posture**

Plaintiff filed a medical malpractice claim against Defendant arising out of medical care provided to Plaintiff by Nurse King, and a jury trial took place from July 29, 2013 to August 1, 2013. After the close of Plaintiff's evidence, Defendant filed a motion for a directed verdict alleging Plaintiff failed to make a submissible case, which the trial court denied.

After the close of Defendant's evidence, Plaintiff requested leave to present rebuttal testimony. The trial court overruled Defendant's objection to the testimony and allowed Plaintiff

---

[3] Toxic Epidermal Necrolysis is the same disease as Stevens Johnson Syndrome but is more extensive and severe as far as the percentage of skin involvement.

to testify. Plaintiff testified during rebuttal that, (1) if Nurse King had instructed her to discontinue the Lamictal on December 4, 2008, she would have stopped taking the medication; (2) if Nurse King would have instructed Plaintiff to contact Nurse Neubauer on December 4, 2008, she would have called Nurse Neubauer; and (3) if Nurse Neubauer would have instructed Plaintiff to discontinue taking the Lamictal on December 4, 2008, she would have stopped taking the medication.

After the close of all the evidence, Defendant filed a second motion for a directed verdict alleging Plaintiff failed to make a submissible case, which the trial court denied. During the instruction conference, Plaintiff offered Instruction No. 7, which stated:

> Your verdict must be for plaintiff and against defendant Patients First Health Care, LLC if you believe:
>
> First, Nurse Practitioner Barbara King either:
>
>> Failed to instruct plaintiff to discontinue Lamictal on December 4, 2008; or
>>
>> Failed on December 4, 2008 to instruct plaintiff to contact the health care provider who had prescribed Lamictal to her to inquire as to whether she should continue taking the medication; and
>
> Second, Nurse Practitioner Barbara King in any one or more of the respects submitted in paragraph First, was thereby negligent; and
>
> Third, such negligence directly caused or directly contributed to cause damage to plaintiff.

Defendant objected to Instruction No. 7 but did not offer an alternate instruction. The trial court overruled Defendant's objection and allowed Instruction No. 7 to be submitted to the jury. Defendant did not offer a comparative fault instruction and the issue of comparative fault was not submitted to the jury.

5

The jury subsequently entered a verdict awarding Plaintiff $525,000 on her medical malpractice claim, and the trial court entered a judgment in accordance with the jury's verdict. Defendant filed a motion for judgment notwithstanding the verdict ("JNOV") and a motion for new trial, which the trial court denied. Defendant appeals.

## II.     DISCUSSION

Defendant asserts three points on appeal. In its first point, Defendant claims the trial court erred in denying various motions because Plaintiff failed to make a submissible case on the issue of causation. In its second point, Defendant asserts the trial court erred in allowing Plaintiff to present rebuttal evidence. Finally, in its third point, Defendant argues the trial court erred in submitting Instruction No. 7.

## A.     Causation

In Defendant's first point on appeal, it contends the trial court erred in denying its motions for directed verdict and JNOV because Plaintiff failed to make a submissible case of medical malpractice on the issue of causation. We disagree.

### 1.     Standard of Review and Relevant Law

We review the trial court's denials of Defendant's motions for directed verdict and JNOV under the same standard. *Davolt v. Highland*, 119 S.W.3d 118, 123 (Mo. App. W.D. 2003). Specifically, we must determine whether Plaintiff made a submissible case, i.e., whether she "presented substantial evidence for every fact essential to liability." *Id.* (quotation omitted). In determining whether Plaintiff made a submissible case, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff, and we disregard all contrary evidence and inferences. *Id.* at 124. "The jury's verdict will be reversed only if there is a

6

complete absence of probative facts to support the jury's conclusion." *Keveney v. Missouri Military Academy*, 304 S.W.3d 98, 104 (Mo. banc 2010).

In order for Plaintiff to have made a submissible case on her medical malpractice claim against Defendant, she must have proven that Defendant's employee, Nurse King, failed to use the degree of skill and learning ordinarily used under the same or similar circumstances by members of her profession, i.e., breached the standard of care, and that Nurse King's negligent act or acts directly caused or directly contributed to cause Plaintiff's injuries. *Washington by Washington v. Barnes Hosp.*, 897 S.W.2d 611, 615 (Mo. banc 1995); *Williams v. Daus*, 114 S.W.3d 351, 359 (Mo. App. S.D. 2003); MAI 21.02 (7th ed. 2012)[4]; MAI 11.06. Instruction No. 7 alleged Nurse King breached the standard of care by either, (1) failing to instruct Plaintiff to discontinue Lamictal on December 4, 2008; or (2) failing to, on December 4, 2008, instruct Plaintiff to contact Nurse Neubauer to inquire as to whether she should continue taking the Lamictal.

With respect to causation, Plaintiff was required to prove that Nurse King's negligent conduct was "both the cause in fact and the proximate or legal cause of [Plaintiff's] injur[ies]." *Davolt*, 119 S.W.3d at 124 (quotation omitted). To establish the "cause in fact" prong of causation, i.e., "but for" causation, Plaintiff must have shown that but for at least one of Nurse King's omissions, Plaintiff's injuries would not have occurred. *Id*. To establish the "proximate cause" prong of causation, Plaintiff must have shown that her injuries were "the natural and probable consequence of [Nurse King's] conduct." *Id*. (quotation omitted).

### 2. Defendant's Arguments

Defendant asserts Plaintiff failed to make a submissible case of "but for" causation for two reasons. First, Defendant argues Nurse King's negligent conduct could not be the cause in

---

[4] All references to MAI are to MAI (7th ed. 2012).

fact of Plaintiff's injuries as a matter of law. Second, Defendant maintains Plaintiff failed to present sufficient evidence that Nurse King's negligent conduct was the cause in fact of Plaintiff's injuries.

### a. "But For" Causation Does Not Fail as a Matter of Law

Defendant first claims Nurse King's failure to instruct Plaintiff to discontinue the Lamictal upon learning that Plaintiff had a rash and Nurse King's failure to tell Plaintiff to call Nurse Neubauer to ask about whether she should continue to take the Lamictal could not be the cause in fact of Plaintiff's injuries as a matter of law because Nurse Neubauer testified she had previously given Plaintiff the same advice (to stop taking the Lamictal and call Nurse Neubauer if Plaintiff developed a rash). To support its argument, Defendant relies on *Harvey v. Washington*, 95 S.W.3d 93 (Mo. banc 2003).

In *Harvey*, the plaintiff filed a medical malpractice action against Dr. Denise Taylor for the wrongful death of his wife, claiming Dr. Taylor was negligent in failing to advocate for decedent's dialysis treatment. *Id*. at 94-95. The jury entered a judgment in favor of the plaintiff, and Dr. Taylor claimed on appeal that the plaintiff failed to make a submissible case on the issue of causation. *Id*. at 94, 95-97. Dr. Taylor, a neurologist, argued her failure to advocate for dialysis treatment could not be a "but for" cause of decedent's death because a kidney specialist caring for decedent had another source of information (decedent's test results and the specialist's personal examination of decedent) as to decedent's need for dialysis. *Id*. at 94, 97. The Missouri Supreme Court noted the evidence demonstrated the kidney specialist was aware decedent required dialysis and the specialist was in the best position to make the decision as to when decedent should begin dialysis. *Id*. at 97. The Court held that "[b]ecause the kidney specialist's negligence [in failing to timely order the kidney dialysis] was 'independently sufficient,' Dr.

8

Taylor's failure to advocate for dialysis treatment fail[ed] as a 'but for' cause of decedent's death" and, therefore, the plaintiff failed to make a submissible case of "but for" causation. *Id*. at 94-97.

Defendant contends *Harvey* stands for the proposition that "[a] defendant health care provider's alleged failure to advise a plaintiff should not be a 'but for' cause of injury if the plaintiff has already been given the same advice by another health care provider." Defendant further contends that pursuant to the reasoning in *Harvey*, Plaintiff, rather than Nurse King, was in the best position to make the decision for Plaintiff to discontinue taking the Lamictal, because Nurse Neubauer testified she had told Plaintiff to stop taking the Lamictal and call Nurse Neubauer if Plaintiff developed a rash. We disagree with both of these contentions.

Unlike the facts here, the relevant portion of *Harvey* involved two health care providers, and the Supreme Court held only that the plaintiff did not make a submissible case of "but for" causation against a health care provider when *another health care provider's* negligence was "independently sufficient." *Id*. Contrary to Defendant's assertions, *Harvey* does not stand for the proposition that a plaintiff-patient should be held to the same standard as a health care provider, even if the plaintiff-patient was aware of information about her medical condition. Nevertheless, here there was evidence Plaintiff was unaware of the information about her medical condition (that she should discontinue Lamictal or call Nurse Neubauer in the event of a rash) on December 4, 2008 when she contacted Nurse King. Although Nurse Neubauer testified she had told Plaintiff to stop taking the Lamictal and call Nurse Neubauer if Plaintiff developed a rash, Plaintiff testified at trial that she did not remember Nurse Neubauer giving her any warnings about taking Lamictal.

9

Defendant's argument in this portion of its first point on appeal is essentially that Plaintiff should not be able to recover from Nurse King because Plaintiff was at fault for failing to stop the Lamictal on her own. Defendant had an opportunity to raise this issue with the jury by offering a comparative fault instruction but chose not to do so. Additionally, even though Defendant did not offer such an instruction, it argued in closing that Plaintiff was solely at fault for her injuries because she did not follow Nurse Neubauer's advice. The jury's verdict concluding that Nurse King's negligent conduct directly caused or directly contributed to cause Plaintiff's injuries indicates that the jury rejected Defendant's attempt to fault Plaintiff.

Based on the foregoing, Defendant's argument that the cause in fact prong of causation was not met as a matter of law has no merit.

### b. There was Substantial Evidence of "But For" Causation

Defendant also claims Plaintiff failed to present sufficient evidence that Nurse King's conduct was the cause in fact of Plaintiff's injuries because Plaintiff did not adequately prove she would have stopped taking the Lamictal on December 4, 2008 if Nurse King or Nurse Neubauer had told her to stop taking the medication.

The following testimony was adduced during Plaintiff's case in chief:

[Plaintiff's Counsel]:     Did you call [Defendant] on December 4th?

[Plaintiff]:                      Yes.

                                       . . .

[Plaintiff's Counsel]:     . . .. Why did you call [Defendant]?

[Plaintiff]:                      Because I had a rash.

                                       . . .

[Plaintiff's Counsel]:     What did [Nurse King] tell you to do?

10

| | |
|---|---|
| [Plaintiff]: | Just to stop taking the Amoxicillin. |
| [Plaintiff's Counsel]: | Did you do that? |
| [Plaintiff]: | Yes. |

Viewing this testimony and all reasonable inferences therefrom in the light most favorable to Plaintiff, Plaintiff stopped taking the Amoxicillin on December 4, 2008 in accordance with Nurse King's instructions. Plaintiff also testified later in her case in chief that she stopped taking the Lamictal on December 12, 2008 in accordance with Dr. Reinberg's instructions. Plaintiff's testimony collectively demonstrates that before Plaintiff's rash progressed to Stevens Johnson Syndrome, two separate medical providers instructed her to discontinue medication and Plaintiff complied with their instructions on the same day the instructions were given. The jury could reasonably infer from this testimony that Plaintiff would have similarly complied with any instruction given by Nurse King or Nurse Neubauer on December 4, 2008.[5]

Therefore, Plaintiff adequately proved she would have stopped taking the Lamictal on December 4, 2008 if Nurse King or Nurse Neubauer had told her to stop taking the medication.

### 3. Conclusion

Defendant's arguments that Plaintiff failed to make a submissible case of medical malpractice on the issue of causation have no merit. Moreover, we find Plaintiff sufficiently proved Nurse King's negligent conduct directly caused or directly contributed to cause Plaintiff's injuries. *Sanders v. Ahmed*, 364 S.W.3d 195, 208 n.11 (Mo. banc 2012) (in a causation analysis

---

[5] Defendant maintains other testimony at trial demonstrates Plaintiff did not always comply with health care providers' recommendations. Defendant points to portions of Nurse Neubauer's testimony that, (1) Plaintiff refused to continue a recommended intensive outpatient program after attending only one session; (2) Plaintiff missed an appointment; and (3) Plaintiff did not follow up on going to individual therapy. Defendant's argument urging us to consider this testimony ignores our standard of review, which requires us to disregard all evidence and inferences that are unfavorable to Plaintiff. *Davolt*, 119 S.W.3d at 124. Accordingly, Defendant's argument has no merit.

11

"the ultimate issue" is whether the defendant's conduct directly caused or directly contributed to cause the plaintiff's injuries). Dr. Paul Genecin and Dr. Larry Rumans both testified Nurse King breached the standard of care by failing to investigate the side effects of Lamictal and failing to instruct Plaintiff to discontinue Lamictal on December 4, 2008. Both doctors also testified, to a reasonable degree of medical certainty, that had the Lamictal been discontinued on December 4, 2008, Plaintiff would not have developed Toxic Epidermal Necrolysis. In addition, as previously indicated, Plaintiff's testimony during her case in chief indicates she would have discontinued the Lamictal on December 4, 2008 if she would have been told to stop taking the medication. Therefore, there was sufficient evidence to support the jury's conclusion that Nurse King's conduct directly caused or directly contributed to cause Plaintiff's injuries. For the reasons set out above, the trial court did not err in denying Defendant's motions for directed verdict and JNOV with respect to the issue of causation.[6] Point one is denied.

## B. Rebuttal Evidence

In Defendant's second point on appeal, it argues the trial court erred in allowing Plaintiff to present rebuttal evidence. We disagree.

Our review of a trial court's decision to admit rebuttal evidence is for an abuse of discretion. *Howard v. City of Kansas City*, 332 S.W.3d 772, 785-86 (Mo. banc 2011). An abuse of discretion occurs when the trial court's decision "is clearly against the logic of the circumstances and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id*. In reviewing a trial court's decision to admit evidence, we review for prejudice, not merely for error, and we will reverse only if the

---

[6] Defendant's point argues only that Plaintiff failed to make a submissible case on the element of causation. Therefore, our discussion is limited to only that contested element of Plaintiff's medical malpractice claim. *See Johnson v. Allstate Indem. Co.*, 278 S.W.3d 228, 235 (Mo. App. E.D. 2009) (similarly limiting our discussion of whether plaintiff made a submissible case).

12

error was so prejudicial as to deprive the defendant of a fair trial and if we find there is a reasonable probability the admitted evidence affected the outcome of the trial. *Teasdale & Associates v. Richmond Heights Church of God in Christ*, 373 S.W.3d 17, 24 (Mo. App. E.D. 2012). "[A]ny competent testimony that tends to explain, counteract, repel or disprove evidence offered by one party may be offered in rebuttal." *Howard*, 332 S.W.3d at 785 (quotation omitted).

In this case, after the close of Defendant's evidence, Plaintiff requested leave to present rebuttal testimony. The trial court overruled Defendant's objection to the testimony and allowed Plaintiff to testify. Plaintiff was asked the following three questions which along with their answers constitute the entirety of Plaintiff's rebuttal evidence.

| [Plaintiff's counsel]: | . . .. Had Nurse King instructed you to discontinue the Lamictal on December 4th, 2008, what would you have done? |
| --- | --- |
| | . . . |
| [Plaintiff]: | I would have stopped it. |
| [Plaintiff's counsel]: | Had Nurse King instructed you to contact Nurse Neubauer on December 4th, 2008, what would you have done? |
| [Plaintiff]: | I would have called Nurse Neubauer. |
| [Plaintiff's counsel]: | Had Nurse Neubauer instructed you on December 4th, 2008[,] after you made that call to discontinue the Lamictal, what would you have done? |
| [Plaintiff]: | Stopped the Lamictal. |

Defendant argues that Plaintiff's rebuttal testimony was inadmissible and prejudicial because the testimony was necessary in order for Plaintiff to make a submissible case to the jury on the issue of causation. This argument lacks merit because, as indicated above in Section

13

II.A.2.b and Section II.A.2.c, Plaintiff made a submissible case on the issue of causation during her case in chief.

Nevertheless, to the extent that Plaintiff's rebuttal testimony should still have been offered in Plaintiff's case in chief, it was within the trial court's considerable discretion to admit the testimony. *See Aliff v. Cody*, 26 S.W.3d 309, 316 (Mo. App. W.D. 2000) (a trial court has considerable discretion in admitting rebuttal evidence which was available and should have been offered in plaintiff's case in chief). Plaintiff's testimony was admissible rebuttal evidence because it tended to counteract and disprove evidence offered by Defendant during defense counsel's direct examination of Nurse Marti Cowherd. Nurse Cowherd testified that Plaintiff's medication list from her December 14, 2008 admission to the hospital identified Lamictal as a current medication. Nurse Cowherd also testified that if Plaintiff was still taking Lamictal on December 14, 2008, that would be inconsistent with the instructions Dr. Reinberg gave Plaintiff on December 12, 2008 to stop taking the medication.

A jury could reasonably infer from the above testimony that Plaintiff did not follow Dr. Reinberg's advice to discontinue the Lamictal on December 12, 2008 and, therefore, Plaintiff would not have followed any instruction by Nurse King on December 4, 2008 to discontinue taking the medication or call Nurse Neubauer, and Plaintiff would not have followed any instruction by Nurse Neubauer on December 4, 2008 to stop taking the Lamictal. The trial court did not abuse its discretion in allowing Plaintiff to counteract and disprove Nurse Cowherd's testimony by testifying in rebuttal that, (1) if Nurse King had instructed Plaintiff to discontinue the Lamictal on December 4, she would have stopped taking the medication; (2) if Nurse King would have instructed Plaintiff to contact Nurse Neubauer on December 4, she would have called Nurse Neubauer; and (3) if Nurse Neubauer would have instructed Plaintiff to discontinue

14

taking the Lamictal on December 4, she would have stopped taking the medication. Point two is denied.

**C.     Instruction No. 7**

In Defendant's third and final point on appeal, it maintains the trial court erred in submitting Instruction No. 7 because it constituted a roving commission. We disagree.

**1.     Standard of Review, Relevant Law, and Language of Instruction No. 7**

Whether a jury was properly instructed is a question of law that we review de novo. *Fleshner v. Pepose Vision Institute, P.C.*, 304 S.W.3d 81, 90 (Mo. banc 2010). "A proper instruction submits only the ultimate facts, not evidentiary details, to avoid undue emphasis of certain evidence, confusion, and the danger of favoring one party over another." *Twin Chimneys Homeowners Ass'n v. J.E. Jones Const. Co.*, 168 S.W.3d 488, 497-98 (Mo. App. E.D. 2005). An instruction is proper if it follows the substantive law and if it can be readily understood by the jury. *Id*. at 498. When reviewing a claim of instructional error, we view the evidence in the light most favorable to the instruction and disregard contrary evidence. *Id*. An appellate court will reverse a jury verdict on the ground of instructional error only where the appellant demonstrates, (1) the instruction misled, misdirected, or confused the jury; and (2) prejudice resulted from the submission of the instruction. *Fleshner*, 304 S.W.3d at 90-91.

A jury instruction is considered a "roving commission" where "it assumes a disputed fact . . . allowing the jury to roam freely through the evidence and choose any facts which suited its fancy or its perception of logic and impose liability." *Twin Chimneys*, 168 S.W.3d at 499 (quotation omitted). An instruction is also considered a "roving commission" when it "fails to advise the jury what acts or omissions of the party would constitute liability" or "when the

15

instruction is too general." *Edwards v. Gerstein*, 363 S.W.3d 155, 166 (Mo. App. W.D. 2012) (quotation omitted).

In this case, Instruction No. 7 stated:

> Your verdict must be for plaintiff and against defendant Patients First Health Care, LLC if you believe:
>
> First, Nurse Practitioner Barbara King either:
>
>> Failed to instruct plaintiff to discontinue Lamictal on December 4, 2008; or
>>
>> Failed on December 4, 2008 to instruct plaintiff to contact the health care provider who had prescribed Lamictal to her to inquire as to whether she should continue taking the medication; and
>
> Second, Nurse Practitioner Barbara King in any one or more of the respects submitted in paragraph First, was thereby negligent; and
>
> Third, such negligence directly caused or directly contributed to cause damage to plaintiff.

Because Instruction No. 7 alleged multiple negligent omissions by Nurse King, the instruction was patterned after MAI 21.02.[7]

### 2. Defendant's Arguments

Defendant argues Instruction No. 7 constituted a roving commission because, (1) the use of the language "failed to" in both submissions in the first paragraph assumed Nurse King had a duty to act, which was a disputed fact; (2) the language in the second submission of the first paragraph was too general; and (3) the language in the instruction assumed that Lamictal caused Plaintiff's Toxic Epidermal Necrolysis, which was a disputed fact.

---

[7] MAI 21.02 is titled "Verdict Directing – Single or Multiple Defendants with Comparative Fault – Multiple Negligent Acts." Instruction No. 7 was patterned after MAI 21.02 in all respects except there was no reference to apportionment of fault or comparative fault, since Defendant was the single defendant at trial and since the issue of comparative fault was not submitted to the jury.

### a.     The Use of the Language "Failed To" in the First Paragraph

Defendant first argues Instruction No. 7 constituted a roving commission because the use of the language "failed to" in the first paragraph improperly assumed Nurse King had a duty to act, which was a disputed fact. The first paragraph required the jury to find that Nurse King either, "*Failed to* instruct plaintiff to discontinue Lamictal on December 4, 2008," or "*Failed* on December 4, 2008 *to* instruct plaintiff to contact the health care provider who had prescribed Lamictal to her to inquire as to whether she should continue taking the medication." (emphasis added). Defendant claims Nurse King's duty to act was a disputed fact because "[t]he defense experts disputed Plaintiff's experts' opinions whether Nurse King had breached her duty of care to Plaintiff."

We initially find that Defendant's argument improperly conflates the issues of duty and breach of the standard of care. "Whether a duty exists is a question of law." *Brown v. Bailey*, 210 S.W.3d 397, 404 (Mo. App. E.D. 2006). For a medical malpractice claim against a nurse practitioner, a nurse's duty to a plaintiff is derived from a nurse-patient relationship. *See Devitre v. Orthopedic Center of St. Louis, LLC*, 349 S.W.3d 327, 332 n.4 (Mo. banc 2011) (medical malpractice claims may be brought against any "health care provider" including physicians and nurses); *Brown*, 210 S.W.3d at 404 (for medical malpractice claim against a physician, a physician's duty to a plaintiff is derived from a physician-patient relationship). A nurse-patient relationship and duty of care arises when the patient knowingly employs the nurse and the nurse knowingly consents to treat the patient. *Corbet v. McKinney*, 980 S.W.2d 166, 169 (Mo. App. E.D. 1998) (similarly describing a physician-patient relationship and physician's duty of care). The nurse's duty of care must correspond to the standards of the profession. *See Byers v. Spaulding*, 725 S.W.2d 893, 895 (Mo. App. W.D. 1987) (similarly describing a physician's duty

17

of care).  Therefore, and as previously indicated, in order for a plaintiff to make a submissible

medical malpractice claim against a nurse practitioner, she must prove, *inter alia*, that the nurse

failed to use the degree of skill and learning ordinarily used under the same or similar

circumstances by members of her profession, i.e., breached the standard of care.  *Washington by

Washington*, 897 S.W.2d at 615; *Williams*, 114 S.W.3d at 359; MAI 21.02; MAI 11.06.  Unlike

the issue of duty, which is a question of law, the question of whether there was a breach of the

standard of care is a matter for the jury's determination.  *Brown*, 210 S.W.3d at 404; *Williams*,

114 S.W.3d at 359.

Here, it is undisputed that Nurse King had a nurse-patient relationship with Plaintiff

because Plaintiff knowingly employed Nurse King and Nurse King knowingly consented to treat

Plaintiff for her rash when Plaintiff called on December 4, 2008.  Accordingly, Nurse King had a

duty to care for Plaintiff in a manner that corresponded to the standards of her profession.

Moreover, contrary to Defendant's argument, the "failed to" language used in the first paragraph

of Instruction No. 7 did not assume a disputed fact.  It was undisputed at trial that, as alleged in

the instruction, Nurse King "Failed to instruct plaintiff to discontinue Lamictal on December 4,

2008," and Nurse King "Failed on December 4, 2008 to instruct plaintiff to contact the health

care provider who had prescribed Lamictal to her to inquire as to whether she should continue

taking the medication."  Although there was a dispute between defense experts and Plaintiff's

experts' as to whether Nurse King's omissions breached the standard of care, the question of

whether Nurse King breached the standard of care was a matter for the jury's determination,

especially because the issue related to the weight, credibility, and resolution of conflicts in

testimony.  *See id*.; *Lashmet v. McQueary*, 954 S.W.2d 546, 552 (Mo. App. S.D. 1997) ("issues

18

relating to the weight, credibility, or the resolution of conflicts in testimony are matters for a jury's determination and are not matters for appellate review").

Defendant's argument that Instruction No. 7 was a roving commission because it used "failed to" language in the first paragraph has no merit. In fact, MAI 21.01, the verdict director for actions against health care providers when there is no comparative fault submitted, recommends "failed to" language be used. MAI 21.01 provides in relevant part, "Your verdict must be for the plaintiff if you believe: First, defendant *(here set out act or omission complained of; e.g., 'failed to set plaintiff's broken leg bones in natural alignment,' or . . . 'failed to administer tetanus antitoxin') . . ..*" (emphasis in original). Instruction No. 7 was patterned after MAI 21.02, the verdict director for actions against health care providers when there are multiple acts of negligence alleged, which is similar to MAI 21.01. We hold the "failed to" language in Instruction No. 7, which was MAI approved, did not mislead, misdirect, or confuse the jury and was, therefore, not erroneous.

### b.     The Second Submission in the First Paragraph

Defendant next argues that Instruction No. 7 constituted a roving commission because the second submission in the first paragraph was too general. The second submission alleges Nurse King "Failed on December 4, 2008 to instruct plaintiff to contact the health care provider who had prescribed Lamictal to her [Nurse Neubauer] to inquire as to whether she should continue taking the medication." Defendant asserts the submission was too general because it left open multiple possibilities of the timing of Plaintiff's communication with Nurse Neubauer.[8] It is

---

[8] Defendant also contends the second submission in the first paragraph was a roving commission because the term "inquire" was vague. We disagree, finding that "inquire" is a non-scientific word and that the meaning of the term did not mislead, misdirect, or confuse the jury. *See Laws v. St. Luke's Hosp.*, 218 S.W.3d 461, 470 (Mo. App. W.D. 2007) ("[w]here [a] word . . . is not a scientific word, which requires a definition from an expert to aid the jury, a roving commission is not created"); *Twin Chimneys*, 168 S.W.3d at 498-99 ("jurors should be credited with ordinary intelligence, common sense, and an average understanding of the English language").

19

undisputed that Nurse Neubauer testified that, (1) she would have been available for consultation in December 2008; and (2) if she would have been contacted during that time, she would have instructed Plaintiff to discontinue the Lamictal.

Defendant's argument in this portion of its point on appeal appears to be that Plaintiff may not have followed any instruction by Nurse King to call Nurse Neubauer or any subsequent instruction by Nurse Neubauer to discontinue the Lamictal. This argument essentially asserts there was insufficient evidence of causation, and our discussion in Section II.A.2.b and Section II.A.2.c is instructive. As set out above, two separate medical providers instructed Plaintiff to discontinue medication and Plaintiff complied with their instructions on the same day the instructions were given. We find a jury could reasonably infer from this testimony that Plaintiff would have similarly and timely complied with any instruction by Nurse King to call Nurse Neubauer or any subsequent instruction by Nurse Neubauer to discontinue the Lamictal.

The second submission of the first paragraph in Instruction No. 7, viewed in light of the rest of the instruction, identifies the specific conduct by Nurse King which would render Defendant liable (if Nurse King failed on December 4, 2008 to instruct Plaintiff to contact Nurse Neubauer to inquire as to whether she should continue taking the Lamictal), if the conduct was a breach of the standard of care and caused Plaintiff's injuries. Therefore, the language was not too general and does not constitute a roving commission. *McNeill v. City of Kansas City*, 372 S.W.3d 906, 910 (Mo. App. W.D. 2012) (quotation omitted) ("[t]o avoid a roving commission, the court must instruct the jurors regarding the specific conduct that renders the defendant liable").

20

c. **Whether the Instruction Assumed the Cause of Plaintiff's Injuries**

Defendant's final argument in its third point on appeal is that the language in Instruction No. 7, specifically the language in the first paragraph, erroneously assumed Lamictal caused Plaintiff's Toxic Epidermal Necrolysis, which was a disputed fact. As previously stated, the first paragraph required the jury to find that Nurse King either, "Failed to instruct plaintiff to discontinue Lamictal on December 4, 2008," or "Failed on December 4, 2008 to instruct plaintiff to contact the health care provider who had prescribed Lamictal to her to inquire as to whether she should continue taking the medication." The third paragraph of Instruction No. 7 required the jury to find Nurse King's negligent conduct "directly caused or directly contributed to cause damage to plaintiff." Because the third paragraph specifically required the jury to make a determination as to causation, Instruction No. 7 did not assume that Lamictal caused Plaintiff's Toxic Epidermal Necrolysis.

**3. Conclusion**

Because Defendant's arguments that Instruction No. 7 constituted a roving commission have no merit, we find the trial court did not err in submitting the instruction. Point three is denied.

## III. CONCLUSION

The judgment entered upon a jury verdict awarding Plaintiff $525,000 on her medical malpractice claim is affirmed.

_____
ROBERT M. CLAYTON III, Judge

Roy L. Richter, P.J., and
Lisa S. Van Amburg, J., concur.